[L. A. No. 1144.   Department Two.—October 17, 1903.]

# WILLIAM M. ROBERTS, Respondent, v. GEORGE H. KRAFTS et al., Appellants.

WATER-RIGHTS — GRANT OF RIGHT TO DEVELOP WATER — COVENANT AGAINST DIMINUTION—ACTION FOR BREACH—INSUFFICIENT DEFENSE. —In an action by a grantee of the defendants of the right to develop water on defendants' land for use on plaintiff's land, in the sub-surface waters of a creek passing through defendants' land, to recover damages for breach of the covenant by the defendants that if the rights owned by the plaintiff were interfered .with by a contemplated diversion of the flow of the stream by the defendants, or their successors or assigns, through a stone ditch above defendants' land, the defendants would grant him a perpetual right to the amount of. diminution thereby effected, not exceeding ten inches of water,—an answer that the owners of the stone ditch had the right to the surface flow of the water, and that the diversions complained of as diminishing plaintiff's rights, were made by defendants' grantees by the permission of such owners, constituted no defense to the action upon the covenant made by the defendants, and was properly stricken out.

ID.—DEVELOPMENT OF WATER—CONTRACT—APPROPRIATION.—Under a grant to plaintiff of the right to enter upon defendants' land and "develop any and all water thereon by means of cuts, tunnels, or otherwise," and convey them to plaintiff's land, where the plaintiff did, by means of tunnels and cuts, concentrate and accumulate the waters diffused through a saturated mass of sand, gravel and bowlders, constituting the sub-surface flow of a creek on defendants' land which was the only water contemplated by the grant and the covenant made by defendants, such acts constituted a development of the water as provided in the contract, and was also a development of water as generally understood with reference to procuring, controlling, and appropriating subterranean waters.

ID.—ESTOPPEL OF DEFENDANTS—RIGHTS OF OTHER PARTIES.—Under the terms of the deed and agreement between defendants and plaintiff, under which defendants granted and confirmed the right of plaintiff to the waters developed on his land, and covenanted against diminution thereof, the defendants are estopped from claiming that the waters granted by them, and developed and appropriated by the plaintiff, did not belong to them, but to third parties having rights below their land.

ID.—CHANGE OF POINT OF DIVERSION FROM STONE DITCH—LIABILITY OF DEFENDANTS UNDER CONTRACT.—The fact that the grantees of the defendants, after diverting the water through the stone ditch as proposed in the contract, subsequently changed the point of diver-

sion to a point above plaintiff's cuts, ditches, and tunnels, is not material to the liability of the defendants under the contract to indemnify plaintiff against loss by diminution of the water to the extent agreed. The gist of the covenant was the diversion of the waters of the creek by the defendants, not to be interfered with by the plaintiff, for which non-interference defendants covenanted that he would be protected against damage.

ID.—SPECIAL DAMAGE—INJURY TO TREES AND FRUIT CROP.—Where the court found that defendants knew when the contract was made that the ten inches of water contracted for had a peculiar value to plaintiff, inasmuch as his land and orchard were of little value without it, and the orchard was in bearing when the breach of covenant was committed, and there was no other source from which plaintiff could obtain water for irrigation, the court was warranted in making an award of special damages to the extent of the injury suffered to the trees and crops by reason of the failure to furnish the water as agreed.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order denying a new trial. D. K. Trask, Judge presiding.

The facts are stated in the opinion of the court.

Curtis & Curtis, and E. R. Annable, for Appellants.

The contract for the development of the water on defendants' land was an actionable wrong against the zanja-owners, and could not confer a right. (*Holman* v. *Brown,* 1 Cowp. 341; *Arnold* v. *Clifford,* 2 Sum. 238.) Improper damages were allowed for the loss of crops. (*Pallett* v. *Murphy,* 131 Cal. 192; *Wallace* v. *Ah Sam,* 71 Cal. 197.[1])

Byron Waters, James Hutchings, and Waters & Wylie, for Respondent.

There was a development of water as contemplated by the deed and contract, and within the right of appropriation of developed water. (*Vineland Irr. Dist.* v. *Azusa Irr. Co.,* 126 Cal. 495; *Beck* v. *Pasadena etc. Water Co.,* 130 Cal. 53; *Yarwood* v. *West Los Angeles W. Co.,* 132 Cal. 207; *Churchill* v. *Maviana Rose,* 136 Cal. 576.) The defendants were estopped by their deed and contract from disputing plaintiff's right. (Bigelow on Estoppel, 4th ed., 355; *Gordon* v. *City*

[1] 60 Am. Rep. 534.

*of San Diego,* 101 Cal. 522.[1]) The damages to the orchard were properly allowed. (*Mabb* v. *Stewart,* 133 Cal. 559.)

LORIGAN, J.—This is an action to recover damages for breach of a covenant relative to certain water-rights. Plaintiff obtained judgment for nine thousand dollars, and defendants appeal from the judgment and from the order denying their motion for a new trial. The general features of the case, as gathered from the findings, are that prior to 1887, and up to the commencement of this action, plaintiff was the owner of one hundred acres of land in San Bernardino County, in proximity to a stream known as Mill Creek, which tract was, to a large extent, set out in orchards, and plaintiff and his family resided upon the premises:

Mill Creek is a natural, innavigable stream of water in said county, rising in the San Bernardino Mountains, and flowing through and emerging from Mill Creek Canyon upon a portion of the San Bernardino Valley, until it empties into the Santa Ana River. The bed of said creek, where the same emerges from said canyon, which is about a mile above a certain forty-acre tract through which it flows (which tract will presently be more particularly referred to), is composed of sand, gravel, and bowlders, extending down a considerable depth, and is at all times capable of a ready flow of water through the same underneath the surface of said creek, and said stream from the point where it emerges from said canyon, until it empties into the Santa Ana River, has a surface and subterranean flow, constituting a watercourse, having a known and well-defined channel and continuous flow of water therein.

On August 19, 1892, the defendants granted to plaintiff the right to enter upon said certain forty-acre tract of land, —the S. W. ¼ of the N. W. ¼ of Sec. 13, T. 1 S. etc.—below the point of diversion hereafter referred to, "and develop any and all water thereon by means of cuts, tunnels, or otherwise." Prior to said grant plaintiff had entered on said tract and appropriated six and three fourths inches of water of the subterranean flow of said stream (to which he had acquired a prescriptive right), and by means of a pipe-

[1] 40 Am. St. Rep. 73.

line, conveyed it onto his said one-hundred-acre tract, and
used it for irrigation, household and domestic purposes.

On August 22, 1892, the defendants, who were the owners
in fee of the forty-acre tract above referred to, subject to
said right of plaintiff to develop water thereon, and the plain-
tiff, executed an agreement, the material portions of which
are: "That, whereas, the party of the second part [plaintiff]
is the owner of certain water-rights, and the right to develop
water on" said forty acres, "and the parties of the first part
[defendants] contemplate diverting the flow of the water of
the stream known as Mill Creek," in or near sections 13
and 14 in said township "by diverting said water from the
natural channel of said stream, at or near the upper end of
the stone ditch built and owned by the owners of Mill Creek
Zanja, and running the same through said stone ditch. Now,
in consideration of," etc., "the said parties of the first part
do hereby covenant, promise, and agree to and with the party
of the second part that, if by the diverting of said water of
Mill Creek, as aforementioned by them, or their successors,
or assigns, the water-right now belonging to the party of
the second part, or any water that he may hereafter develop
on the said 'forty-acre tract,' is diminished within seven years
from date hereof, that they will furnish him with a per-
petual water-right, conveying an amount of water equal to
the amount so diminished, and deliver the same into his pipe-
line, flume, or ditch," on said forty-acre tract, "provided,
that the total amount to be furnished under this agreement
shall not exceed ten inches of water. In consideration of the
above agreements . . . the party of the second part promises
and agrees that he will not hinder, impede, or delay the chan-
ging of the course of the water as herein contemplated."
When said agreement was executed defendants claimed to
own the right to divert the waters of said Mill Creek, in the
manner and at the points indicated in it, below said forty-acre
tract, and convey the full flow to a point over a mile below
said forty-acre tract, and in December, 1892, conveyed such
ownership or right to divert said water to the Redlands Elec-
tric Light and Power Company, a corporation; that between
August 22, 1892, and June 1, 1896, plaintiff, by means of cuts,
ditches, and tunnels, made and excavated on said forty-acre

tract, about the middle thereof, developed and intercepted a large quantity of the subterranean flow of said water, and of the water percolating through the sand, gravel, and bowlders of said tract, from both the surface and subterranean flow of said creek to the extent (with the six and three fourths inches theretofore appropriated) of fifty-four and three fourths inches, and conveyed the same to his hundred-acre tract, and beneficially used it for agricultural, domestic, and household purposes; that in 1893, by virtue of the conveyance from defendants, the said electric company entered upon the creek at the northeast corner of said forty-acre tract, and above plaintiff's cuts, ditches, and tunnels, and by means of a pipe-line constructed in its bed, diverted all the surface water flowing in said creek, and conveyed it about a mile below said forty-acre tract, to a point some four hundred and fifty feet lower in elevation than said tract, and used it for electrical purposes; that in 1896, after all of the plaintiff's developments were made, the company extended its pipe some thirty-six hundred feet further up stream, and took all the surface water from this last point for the use above indicated; that before the construction of said pipe-line in 1893, or its extension in 1896, and from time immemorial, the surface flow of said creek was sustained by a saturated mass composed of sand, gravel, and bowlders beneath it, and that said surface flow had always wasted and been diminished by wastage into said sand, gravel, and bowlders, and constituted a subterranean stream, which, to the extent of upwards of a hundred inches, flowed in said subterranean channel between the points of diversion by the company and the location of plaintiff's tunnels, shafts, and ditches, down and through said forty-acre tract; that none of the water developed and used by plaintiff had been theretofore appropriated or used by any person whatever, but had theretofore been allowed to run to waste and percolate through the soil until developed and saved from waste and devoted to a useful purpose by plaintiff; that the diversion by the company had so diminished the subterranean flow in said forty-acre tract that the amount of water developed by plaintiff was reduced forty-four inches and upwards, and that the flow thereof is but 4.94 inches; that in 1889 plaintiff demanded, under the said agreement, that the defendants deliver him said ten

inches of water agreed for, which they refused to do. The court found, in addition to the above facts, that the one-hundred-acre tract of plaintiff was practically arid land, and his orchard of little value without irrigation, and that by the failure of defendants to furnish the water as agreed, the fruit-trees in said orchard were injured and the fruit thereon was rendered valueless, for which special damages of one thousand dollars were awarded, in addition to eight thousand dollars, which the court found was the value of the perpetual flow of ten inches of water.

As grounds of reversal, appellants insist, that no water was developed on the forty-acre tract, as provided in the contract; that no water was diverted by them, or their successors, at the place, and by the means, described in the contract, and that improper damages were allowed.

Defendants also insist that the court erred in striking out parts of their amended answer.

While in the transcript, it appears that specifications concerning the insufficiency of the evidence to sustain certain of the findings are made, no point in regard to any of them is urged in appellants' brief, and we take it, that reliance is placed solely upon the grounds above indicated, and we shall limit ourselves to a consideration of them alone. Disposing first of the alleged error in striking out portions of the amended answer: In this answer which was offered during the trial of the case, it is set up that when the grant to plaintiff was made by them, and the contract entered into with him was executed, the surface waters of Mill Creek were, and for a long time had been, diverted through a certain ditch, known as the Mill Creek Zanja, and that the Redlands Electric Light and Power Company made the diversions complained of through the permission of the owners thereof.

We cannot see how this would constitute any defense under the contract. There is no question but that the electric company succeeded to the rights which the defendants claimed to possess, to divert these waters for electrical purposes, when the contract was executed. The contract did not provide that the plaintiff was to establish his right against all claimants to the waters he might develop under defendants' grant, and the right to do which was confirmed by recital in the agree-

ment, before he could have a right of action against defendants upon it.  Under the terms of the contract it is of no moment whether the zanja-owners, or defendants, had the better right to appropriate the water.  Defendants claimed to own the right, and recited in the contract that they contemplated diverting the waters of the zanja, and to run the same through that ditch.  They contracted that if a diversion by them, or their successors in interest, damaged plaintiff, they would indemnify him in the way provided for in the contract.  It was not a matter under the contract as to how the company acquired the right to divert the stream—whether from defendants or some third person, or from both—but whether, in exercising its right of diversion, plaintiff was damaged.  If he was so damaged, defendants are bound by their contract as it is written, and in accordance with the fact, and the defense interposed could not avail them.

Coming now to the merits of the appeal:—

It is insisted, first, that there was no water developed by the plaintiff, as provided in the contract.  We do not discover the slightest ground for this claim.  That the plaintiff did, by means of tunnels and cuts, concentrate and accumulate the waters diffused through the saturated mass of sand, gravel, and bowlders constituting the sub-surface flow of Mill Creek, and convey them to his home premises for general use, there can be no question.  This was not only a development, but it was the exact method of development, and the waters to which it should apply, as specified in the conveyance of August 19, 1892, by the defendants to plaintiff, of the right to enter the land, and ''develop any and all waters thereon by means of cuts, tunnels, or otherwise.''  It was equally this development which all the parties had in mind, when, in the agreement of August 22, 1892, they recited that the plaintiff was the owner of certain water-rights, and the right to develop water on this forty acres.  And it was the possible loss of the waters so developed, by the diversion of Mill Creek, that they had in mind.  They certainly could have had no other, because there is no pretense that any other waters existed on the tract, except this subterranean flow.

It was equally a development, as generally understood, with reference to procuring, controlling, and appropriating

subterranean water. In *Vineland Irr. Dist.* v. *Azusa Irr. Co.*, 126 Cal. 495, the court says: "We therefore hold it to be the law, and we think it to be a moderate and just exposition thereof, that one may, by appropriate works *develop* and secure to useful purposes the sub-surface flow of our streams, and become, with due regard to the rights of others in the stream, a legal appropriator of water by so doing. . . . If, upon the other hand, one can by *development* obtain subterranean waters without injury to the superior rights of others, clearly he should be permitted to do so. (*Beck* v. *Pasadena Water Co.*, 130 Cal. 53; *Yarwood* v. *West Los Angeles Water Co.*, 132 Cal. 207; *Churchill* v. *Maviana Rose*, 136 Cal. 576.) Under this same head counsel for appellants discuss, quite generally, the proposition that the subterranean waters so developed by plaintiff were not subject to development or appropriation, as they were part of the Mill Creek stream, which many years before plaintiff entered on this forty-acre tract at all, had been diverted and appropriated some distance below it, through a ditch, and was still being diverted and used. Assuming this to be true, still under the terms of the deed and agreement between defendants and plaintiff we cannot see how any advantage can be taken of that fact. This is only another phase of the question attempted to be presented under that portion of the amended answer stricken out, and what was said concerning it applies here. Aside from the finding of the court that the appropriation by plaintiff was the only appropriation made of these waters (which under *Vineland Irr. Dist.* v. *Azusa Irr. Co.*, 126 Cal. 495, he could make) still, aside from this, the defendants, by their deed and agreement, are estopped from asserting that plaintiff did not have title to the waters developed by him. They granted him the right to develop all the waters on the tract, without reservation or limitation, and cannot be heard now to say that some of the waters which he did develop were not waters which they granted him the right to develop, but which belonged to some one else. They cannot go behind their deed to attack the right to these waters, which they purported to convey, and the ownership of which in the contract they recognized in the plaintiff.

Appellants' second point is, that no water was developed

at the place and by the means described in the contract. Their particular claim is, that the diversion of which plaintiff complains was not made at the upper end of the stone ditch mentioned in the contract, but at a much further point up the stream. We do not think the particular point of diversion is of controlling or any importance. The fact is, that the first diversion made by the Electric Light and Power Company, as successors to the defendants, was above the upper end of the stone ditch, and the diversion further up the stream was not made by it until 1896. In insisting on this point we think appellants are attempting to place too strict and literal a construction on the contract, one which certainly is not in harmony with its general terms, or its particular object, or the purposes they had in view, and which is calculated to substitute the manner or means of diversion for the fact of diversion, which was the important matter in the contract. While the recital in the agreement is, that the defendants contemplate diverting the flow of the water of Mill Creek "by diverting said water from the natural channel of said stream at and near the upper end of the stone ditch . . . and running the same through said ditch," this is, nevertheless, only a recital and not part of the covenant. It is simply the declaration of a general purpose to be accomplished near a certain point, in a certain way. The covenant which follows this recital, and upon which plaintiff's rights are based, provides that "*if by the diversion of said water of Mill Creek, as aforementioned,* by them, or their successors, or assigns," the water now belonging to plaintiff, or to be developed, "is *diminished,*" etc., etc. This covenant embraces the purpose and object the parties had in view when they contracted, and does not apply to any particular place or method. The general purpose they had in view was to divert all the waters of the stream, and it was this general diversion which they recognized might injure the plaintiff's acquired rights in developed water, and against which he was to be protected by the contract. And this is further apparent from the covenant on plaintiff's part not to "hinder, impede, or delay the changing of the course of the water." The gist of the covenant was the diversion of the water of Mill Creek by the defendants, not to be interfered with by the plaintiff. Under the terms of that

contract, as it was a matter of more particular interest to them, the defendants accorded themselves wide discretion in determining where, or how, the diversion should be made, a discretion which the plaintiff covenanted not to interfere with, and which covenant he faithfully kept, and for which non-interference the defendants covenanted that he would be protected against any damage, which the exercise of that discretion on their part should result in to him.

As to the amount of damages. This only applies to the one thousand dollars which the court found the plaintiff had suffered as special damages for injuries to trees, and the fruit crop thereon, by reason of the defendants' failure to furnish the water as agreed. It is insisted by appellants that such damages are remote and speculative. The court found that, when the contract between the parties was made, the defendants knew that the ten inches of water contracted for had a peculiar value to plaintiff, inasmuch as his land and orchard were of little value without it. The orchard was in bearing when the breach of the covenant was committed, and there was no other source from which plaintiff could obtain water for irrigation. There is no question but what the amount of damages awarded was suffered, and we think that under the facts as found the court was warranted in making the award. (*Mabb* v. *Stewart,* 133 Cal. 559.)

The judgment and order appealed from are affirmed.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.