(April 20, 1911.)

# JAMES R. NIELSON, Respondent, v. RALPH PARKER and FRANK PARKER, Appellants.

[115 Pac. 488.]

WATER AND WATER RIGHTS—APPROPRIATION—DIVERSION AND USE—
PERMIT FROM STATE ENGINEER.

(Syllabus by the court.)

1. Both the constitution and statutes of this state recognize the right of a prior appropriator in and to the public waters of this state, and the statute, sec. 3245, declares that the "first in time is the first in right."

2. Where one actually diverts the water of a stream and applies the same to a beneficial use in the irrigation of his growing crops, although he has never applied to the state engineer for a permit to do so, and has never procured either a permit or a license from the state engineer, still his right is superior and paramount to any right that a subsequent appropriator can procure, even though the latter secures a permit from the state engineer to appropriate and divert the water of the stream.

3. The state engineer has no right, power, or authority to interfere with vested rights or to grant a permit for the appropriation and diversion of the water of a stream where the same has already been diverted and applied to a beneficial use.

4. Under the laws of this state a water right is real property, and one who has actually diverted the water of a stream and applied the same to a beneficial use is in the actual possession of such real property, and this possession constitutes actual notice to any subsequent appropriator of the water of the same stream, or to any person who subsequently applies to the state engineer for a permit to appropriate and divert the water of the same stream.

APPEAL from the District Court of the Fifth Judicial District, in and for the County of Oneida. Hon. Alfred Budge, Judge.

Action to establish the respective rights and priorities of claimants to the use of the waters of Wood Canyon in Oneida

county. Judgment for the plaintiff and defendants appealed. *Affirmed.*

D. C. McDougall and T. D. Jones, for Appellants.

It was undoubtedly the intention of the legislature that the method prescribed by the 1903 law was the exclusive method thereafter to be followed in the appropriation of the public waters of this state. (*Idaho Power etc. Co. v. Stephenson,* 16 Ida. 418, 101 Pac. 821; *Speer v. Stephenson,* 16 Ida. 707, 102 Pac. 365.)

E. G. Davis and S. D. Davis, for Respondent.

Under our law as it exists to-day we have two separate and distinct methods of acquiring a right to the unappropriated waters of the state; the first by actual diversion and use, and the second by obtaining a permit from the state engineer and complying with the conditions of the law as to the completion of the work necessary to divert the water upon the land and the application of the waters to a beneficial use. In the first case the right to the use of the water dates from its actual application to a beneficial use, and, in the second, the necessary work being completed, the right would relate back to the date of the permit. (*Lockwood v. Freeman,* 15 Ida. 398, 98 Pac. 295; *Sand Point Water & Light Co. v. Panhandle Development Co.,* 11 Ida. 405, 83 Pac. 347; *Pyke v. Burnside,* 8 Ida. 490, 69 Pac. 477; *Hard v. Boise City Inv. & Land Co.,* 9 Ida. 589, 76 Pac. 331, 65 L. R. A. 407; Wiel's Water Rights in the Western States, secs. 140–142; *Morris v. Bean,* 146 Fed. 426.)

AILSHIE, Presiding J.—In 1901 the respondent herein filed a notice of appropriation of the waters of Wood Canyon in Oneida county. Commencing with the year 1901 and during subsequent years up to and including 1907 it appears that the respondent did certain work in cleaning out the natural channel of the stream for the purpose of carrying water down the stream to his land. This stream was fed by springs

several miles up the canyon above his lands, and it appears that quite early in the irrigation season the water became so low that it did not flow as far down the canyon as to the lands of respondent. In 1907 respondent made a desert entry on lands some four miles up the canyon above his homestead, and thus much nearer the source of supply of this stream. In both 1908 and 1909 he cultivated a small tract on his desert entry and irrigated the same by water taken from Wood Canyon.

In August, 1908, appellants made application to the state engineer for a permit to appropriate the waters of Wood Canyon for the purpose of irrigating certain lands owned by appellants and lying along this stream. A second application was made in December of the same year, and a third application in June, 1909. Appellants, however, did not use the waters from this stream until June, 1909. This action was instituted to determine the respective rights of the parties and their priorities to the waters of this stream.

The trial court found, first, that respondent's appropriation was entitled to date from 1901, and that he had since that time applied the water to the irrigation of his homestead. In the second place, the court found, as a conclusion of law, that the respondent, having actually diverted and applied the waters of the stream to the irrigation of his lands—and particularly his desert entry—prior to the time that appellants applied to the state engineer for their permit to appropriate the waters of the stream, the respondent consequently acquired a prior and superior right to appellants' and was entitled to the waters of the stream, even though he had never applied any of the waters of the stream to his homestead. It is contended by appellants that the evidence is not sufficient to support the court's finding on the first proposition, namely, that the respondent had applied the water to a beneficial use, in that he had used it in irrigating his homestead since 1901. On this question there is a conflict in the evidence. While there is apparently some evidence to support the respondent's contention, there is much evidence against him. As we view the case, our conclusion on the second ques-

tion will finally dispose of the case, and will render it unnecessary for us to consider the evidence on the first question presented.

It is contended by appellants that under the act of 1903 requiring application to be made to the state engineer for permits and prescribing that "all rights to divert and use the waters of this state for beneficial purposes shall hereafter be acquired and confirmed under the provisions of this chapter. And after the passage of this title all the waters of this state shall be controlled and administered in the manner herein provided" (sec. 3252), all water rights must be acquired under the provisions of the statute, and that there is no longer any such thing as acquiring a water right by diversion and an application to a beneficial use without first complying with the statute and securing a permit. On the other hand, respondent contends that the right to the use of the public waters of this state may be acquired in two ways: First, by actual diversion and application to a beneficial use, and second, by pursuing the successive steps prescribed by the statute. (Act 1903, sec. 3245, Rev. Codes, et seq.)

In the outset we should not lose sight of the provisions of sec. 3, art. 15 of the constitution, which prescribes that "The right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses, shall never be denied. Priority of appropriation shall give the better right as between those using the water. . . . ." Sec. 3245 of Rev. Codes provides that "as between appropriators the first in time is the first in right."

Sec. 3242 provides: "The right to the use of the waters of rivers, streams, lakes, springs, and of subterranean waters may be acquired by appropriation." The act of 1899 provided for the posting of notices and filing copies with the state engineer by appropriators of water, and was as positive and mandatory in its requirements as is the present law. Notwithstanding those provisions, this court in *Sand Point etc. Co. v. Panhandle etc. Co.*, 11 Ida. 405, 83 Pac. 347, in discussing the methods of appropriating the public waters of this

state, said: "A person desiring to appropriate the waters of a stream may do so either by actually diverting the water and applying it to a beneficial use, or he may pursue the statutory method by posting and recording his notice and commencing and prosecuting his work within the statutory time. (*De Necochea v. Curtis*, 80 Cal. 397, 20 Pac. 563, 22 Pac. 198; *Wells v. Mantes*, 99 Cal. 583, 34 Pac. 324; *Watterson v. Saldunbehere*, 101 Cal. 112, 35 Pac. 432.) In the latter case his appropriation will be entitled to date from the time of posting his notice (Sess. Laws 1899, p. 380, sec. 8; *Wells v. Mantes, supra; Nevada Ditch Co. v. Bennett*, 30 Or. 59, 60 Am. St. 777, 45 Pac. 472, and note thereto; Works on Irrigation, pp. 44–46; Long on Irrigation, sec. 37), and any intervening locator or claimant of the waters will be treated as subsequent both in time and right. In such case the appropriation is initiated by the posting of the notice, and an inchoate right thereby arises which may ripen into a legal and complete appropriation upon the final delivery of the waters to the place of intended use. In other words, by pursuing the successive steps prescribed in the statute and completing his diverting works and applying the water to a beneficial purpose the appropriation is completed. The only difference between an appropriation initiated by posting notice and one initiated by diversion and application of the waters, is that the appropriator who claims under notice is allowed the extra sixty days within which to commence his work and reasonable time thereafter in which to complete the same."

This court again, in *Lockwood v. Freeman*, 15 Ida. 398, 98 Pac. 295, recognized the same principle, and in speaking of the contention made by the appellant in that case that he had acquired a permit from the state engineer and that his adversary had not complied with the law in the matter of securing a permit or giving notice, the court said: "There is nothing in that contention whatever, as it is clearly shown that all of the waters of said creek had been appropriated by the respondent and his grantors long before any license was applied for

by the appellants from the state engineer. The state engineer has no authority to deprive a prior appropriator of water from any streams in this state and give it to any other person. Vested rights cannot thus be taken away."

The constitution and statute of Wyoming is substantially the same as our own on the subject of water and water rights. In *Morris v. Bean*, 146 Fed. 423, Judge Whitson, in speaking of the statutes with reference to notices, etc., said, *inter alia*: "But the rule of relation was in a measure uncertain in its application, in that what constituted a reasonable diligence in the completion of the work was a matter within the sound discretion of the courts. Again, the appropriator who initiates his right by statutory notice is required to designate the amount of water claimed, the purpose for which it is to be used, if for irrigation, the land upon which it is to be applied, etc., thus affording information to other intending appropriators, and giving constructive notice as to the amount of water which has already been claimed from the common source of supply. But where one has actually diverted water, and is using it, the right to its use may, by analogy, be likened unto the doctrine that one purchasing real estate must take notice of the rights of those in possession, notwithstanding the recording statutes. Water diverted from a stream naturally diminishes the volume. One seeking to acquire the right to the use of water must take notice of the amount available and visible, and it must be conclusively presumed that he inquires into the extent of the supply from which the water is to be drawn, and how that supply has been diminished by others whose rights are prior in time. These statutes were never intended to destroy the right of appropriation by methods other than those defined by them. Their only effect is to deny the power of an appropriator who fails to file the notice required, to claim as of the date of the beginning of his work; the penalty for such failure being to limit the right to the time when the water is actually applied and used."

The doctrine prevailed prior to statehood and in the earliest territorial history that the "first in time is the first in right,"

in the diversion and use of the public waters. Indeed, this is the doctrine that has prevailed throughout the states and territories of the arid west; it is found, expressed in some form or other, in the constitutions of most of the arid states, and has been reinforced by statutes in practically all of the irrigation states. It has never been the intention, so far as we are advised, of the legislature to cut off the right an appropriator and user of water may acquire by the actual diversion of the water and its application to a beneficial use. This constitutes actual notice to every intending appropriator of the water of such a stream. It is like a man being actually in possession of realty; indeed, a water right is realty in this state. (Sec. 3056, Rev. Codes; *Ada County Farmers' Irr. Co. v. Farmers' Canal Co.*, 5 Ida. 793, 51 Pac. 990, 40 L. R. A. 485; *McGinness v. Stanfield*, 6 Ida. 372, 55 Pac. 1020; *Hall v. Blackman*, 8 Ida. 272, 68 Pac. 19.) The legislature, however, has provided for a constructive notice, and to those who avail themselves of the statute and give this notice there is given a certain period of time in which to commence the construction of diverting works, and a further period of time in which to complete such works, and divert the water and apply it to the beneficial use for which the application was made. This is a protection to the claimant, but if he should actually divert the water and apply it to a beneficial use before the rights or interests of any other person intervene, he would be entitled to the protection of the law in the use and enjoyment of the right thus acquired. He would then be in actual possession of the property to the extent of the diversion and use, and to that extent would need no protection from a constructive notice which a compliance with the statute affords.

Nielson having actually diverted all the water of Wood Canyon and used it in the irrigation of his crops grown on his desert entry prior to the time appellants made application to the state engineer for a permit to appropriate the waters of the same stream, he was therefore "first in right," and could

not be deprived of such right through a permit or license from the state engineer or otherwise.

The judgment should be *affirmed,* and it is so ordered. Costs awarded in favor of respondent.

Sullivan, J., concurs.