IN THE

# SUPREME COURT

OF THE

# STATE OF IDAHO.

(December 26, 1918.)

AGNES B. RENO et al., Respondents, v. J. R. RICHARDS
et al., Respondents, and SAMUEL GODDARD,
ALFRED L. GODDARD, GEORGE GODDARD,
JOHN GODDARD, FRANK G. WORTHING and
JESSIE WORTHING, Appellants.

[178 Pac. 81]

WATER AND WATER RIGHTS—RIGHTS TO THE USE OF WATER CONSERVED
BY ARTIFICIAL MEANS—DOCTRINE OF RELATION—EVIDENCE.

1. A person who, by removing obstructions from a stream and
constructing artificial works, prevents the loss of water flowing
therein through seepage and evaporation, and materially augments
the amount of water available from the stream for a beneficial use,
has the right to make use of the amount of water so conserved by
his efforts in excess of the natural flow of the stream.

2. It is the duty of the trial court to make findings of fact upon
all the material issues presented by the pleadings and necessary for
a proper disposition of the case.

3. Water may be appropriated from a stream by diversion there-
from and application to a beneficial use, without compliance with the
steps provided by the statute, but in such case it requires actual appli-
cation to a beneficial use to complete the appropriation, and the right
is limited to the amount so applied to a beneficial use and with date
of priority determined by such application.

4. Where two claimants make use of the water diverted from a
stream through a common ditch, or canal, by a system of rotation, it
is error to award to both claimants an amount of water in excess of
that actually diverted by the canal and used by them.

5. In a suit brought for the purpose of adjudicating rights to the
use of the waters of a stream, it is incumbent upon those basing
their claims upon actual diversion of water and application to a

beneficial use, without compliance with the steps required by the statute, to produce evidence sufficiently definite to enable the court to find the quantity of water so appropriated and necessarily used by the appropriator. It is also incumbent upon such claimant to produce evidence showing the beneficial use to which the water has been applied.

6. In a suit brought to obtain an adjudication of the rights to the use of water from a stream, Rev. Codes, sec. 4621, prohibits the court from allotting to any claimant by its decree an amount of water in excess of the amount actually used for the beneficial purposes for which the right is claimed. The proviso in that section, directing the court to set a time within which the amount of water which can be diverted through works already constructed, in excess of the quantity already beneficially applied, shall be applied to a beneficial use, has reference only to claimants who have initiated their rights by a compliance with the statute. Such claimants only are in a position to profit by the doctrine of relation. This proviso has no application to and is not available for the benefit of one who claims an appropriation of water by virtue of actual diversion and application to a beneficial use, without reference to the method of initiating water rights prescribed by the statute.

[As to diligence in applying to useful purpose, see note in 60 Am. St. 811.]

APPEAL from the District Court of the Ninth Judicial District, for Fremont County. Hon. J. G. Gwinn, Judge.

Suit for adjudication of water rights. Remanded with instructions to modify.

W. P. Guthrie, for Appellants Frank G. Worthing and Jessie Worthing.

A prior appropriator of the waters of a stream has no right to salvage or to new waters saved or added to a stream by the artificial works of another. (Wiel on Water Rights in Western States, 3d ed., secs. 38a, 61, 279; *Beaverhead etc. Co. v. Dillon etc. Co.,* 34 Mont. 135, 85 Pac. 880, 882; *Churchill v. Rose,* 136 Cal. 576, 69 Pac. 416; *Vineland Irr. Co. v. Azusa Irr. Co.,* 126 Cal. 486, 58 Pac. 1057, 46 L. R. A. 820; *Ironstone Ditch Co. v. Ashenfelter,* 57 Colo. 31, 140 Pac. 177; *Fuller v. Sharp,* 33 Utah, 431, 94 Pac. 813; *Roberts v.*

*Crafts,* 141 Cal. 20, 74 Pac. 281, 23 L. R. A., N. S., 1065 note.)

In an action to quiet title to water appropriated from a public stream in this state, where the issue joined is one of priority, the court should find the actual appropriation made by each appropriator, giving the time the appropriation was made and the quantity of water appropriated to a beneficial use by each appropriator. (*Lee v. Hanford,* 21 Ida. 327, 121 Pac. 558; *Berlin Machine Works v. Dehlbom Lumber Co.,* 29 Ida. 494, 160 Pac. 746; *Miller v. Wheeler,* 54 Wash. 429, 103 Pac. 641, 23 L. R. A., N. S., 1065.)

Briggs & McConnell, for Appellants Samuel Goddard, Alfred L. Goddard, George Goddard and John Goddard.

The person who, by his own efforts, has saved and conserved the waters of a natural stream is entitled to the use thereof. (*Creighton v. Kaweah Canal & Irr. Co.,* 67 Cal. 221, 7 Pac. 658; *Butte Canal & Ditch Co. v. Vaughn,* 11 Cal. 143, 70 Am. Dec. 769.)

The principle of law is identically the same whether the junior appropriator conveys water into a natural stream and afterward diverts the same, or whether he improves a natural channel of a stream and thereby conserves and saves the water and afterward appropriates and applies the same to a beneficial use. (*Platte Valley Irr. Co. v. Buckers Irr. etc. Co.,* 25 Colo. 77, 53 Pac. 334, 335; *Herriman Irr. Co. v. Butterfield Mining etc. Co.,* 19 Utah, 453, 57 Pac. 537, 51 L. R. A. 930; Farnham on Waters and Water Rights, sec. 672; Wiel on Water Rights, sec. 38a; *Wiggins v. Muscupiabe Land & Water Co.,* 113 Cal. 182, 54 Am. St. 337, 45 Pac. 160, 32 L. R. A. 667; *Pomona Land & Water Co. v. San Antonio Water Co.,* 152 Cal. 618, 93 Pac. 881.)

Standrod, Coffin & Standrod and Soule & Soule, for Respondents.

Water "saved or conserved" by the construction of an improved channel, or water brought into a stream from an

independent source, can be appropriated exclusively by the parties effecting the saving or bringing in the new water when: 1. The fact of actual saving or conservation is established by clear and convincing proof and with "the nicest exactness possible"; 2. When the amount of the saving can be determined definitely, certainly and exactly; 3. When the saving or conservation is permanent and not susceptible to constant and gradual depreciation. (Wiel on Water Rights, 3d ed., secs. 38a, 40.)

The burden is upon the party asserting a right founded upon conservation to establish the fact by "clear and convincing evidence." (*Moe v. Harger,* 10 Ida. 302, 305, 77 Pac. 645; *Josslyn v. Daly,* 15 Ida. 137, 149, 96 Pac. 568.)

The evidence in this case does not show a saving or conservation of the waters of Birch Creek by any individual or coterie of individuals, nor is it sufficiently definite and certain to allow any exclusive rights to be founded thereon.

RICE, J.—This action was brought to obtain an adjudication of the rights to the use of the waters of Birch Creek. Birch Creek is a stream which has its source in Lemhi county, near the southern boundary thereof, in what is known as Birch Creek Springs. It flows in a southeasterly direction for a distance of about thirty miles, its waters gradually sinking into the ground along the lower part of its course until they are all absorbed at a point commonly known as Birch Creek Sink, and they do not appear again at any known place.

There were forty-four parties plaintiffs and defendants named in the suit. There was a prior adjudication of the rights to the use of the waters of this stream in the year 1894. That decree was confirmed by the lower court in this suit. The cause was tried by the court, findings of fact and conclusions of law were made and judgment entered conforming thereto.

Two appeals from the judgment are before this court for consideration. The appellants claim error was committed in

certain findings and conclusions of the court, and portions of the judgment based thereon.

Appellants Frank G. Worthing and Jessie Worthing, defendants and cross-complainants in the court below, specify as error the finding of the court that on July 29, 1907, appellants went upon Pass Creek, a tributary of Birch Creek, and by means of cleaning out the channel thereof, and performing other work thereon, caused a substantial but indefinite increase in the flow of the waters of said Pass Creek, for the reason that the evidence shows a considerable and definite increase in the flow of the waters of said stream, amounting to at least two second-feet, was caused by the labors of these appellants. It is contended that the court should have found definitely the amount of the increased flow caused by them, and awarded to them a right to the use of such increase superior to that of all other claimants from the stream.

These appellants claim under a permit issued by the state engineer on July 29, 1907, and submitted in evidence a license issued by the state engineer granting them the right to the use of 2.03 second-feet of the waters of Birch Creek, with date of priority July 29, 1907, the date of the original permit. The lands of appellants are situated on Birch Creek above the point where the waters of Pass Creek flow into Birch Creek, and they claim a right to take out of Birch Creek the amount of water which they have caused to flow therein below the point where they diverted the water. It is not shown that there were any rights intervening between their point of diversion from Birch Creek and the point where they caused the waters of Pass Creek to empty into Birch Creek. In the absence of detriment to other users of water from Birch Creek, there is no doubt of their right to make a diversion from Birch Creek, at their point of diversion, of the amount of water which they caused to flow therein for the use of other appropriators farther down the stream.

It was shown that Pass Creek has its source in a number of springs, and after flowing a distance of about six miles

through a canyon, continues a distance of about three and one-half miles through a comparatively level country to a point where it empties into Birch Creek; that the soil through which it flows is very porous; that many obstructions were in the stream, and that there was a large percentage of loss by seepage and evaporation in its natural channel. These appellants claim that by removing obstructions from the channel, such as brush and fallen logs, and excavating channels through sand-bars and other obstructions, for a distance of some miles through the canyon, and by taking out a ditch of sufficient capacity to carry all the waters of the creek the remaining distance of three or four miles, they have considerably augmented the flow of the stream. They cite many authorities in support of their claim that they are entitled to the use of the waters which they have thus conserved. (See Wiel on Water Rights, secs. 38a and 61; *Ironstone Ditch Co. v. Ashenfelter,* 57 Colo. 31, 140 Pac. 177; *Beaverhead etc. Co. v. Dillon etc. Co.,* 34 Mont. 135, 85 Pac. 880; *Churchill v. Rose,* 136 Cal. 576, 69 Pac. 416; *Fuller et al. v. Sharp et al.,* 33 Utah, 431, 94 Pac. 813; *Pomona L. & W. Co. v. San Antonio Water Co.,* 152 Cal. 618, 93 Pac. 881; *Wiggins v. Muscupiabe L. & W. Co.,* 113 Cal. 182, 54 Am. St. 337, 45 Pac. 160, 32 L. R. A. 667; *Roberts v. Crafts,* 141 Cal. 20, 74 Pac. 281; *Miller v. Wheeler,* 54 Wash. 429, 23 L. R. A., N. S., 1065, 103 Pac. 641.)

We do not know of any statute, or any policy of our laws, to prevent the application of the rule announced by the above-cited authorities. The court having found that these appellants effected a substantial increase in the flow of Pass Creek, it should have determined as definitely as possible the amount of such increase and awarded the same to the use of appellants. (*Pomona L. & W. C. v. San Antonio Water Co., supra; Butte Canal etc. Co. v. Vaughn,* 11 Cal. 143, 70 Am. Dec. 769, *Miller v. Wheeler, supra.*)

These appellants also specify as error the action of the court in awarding to the Wood Live Stock Company the right to the use of 1.4 second-feet of the waters of Pass

Creek, with date of priority June 1, 1900; also the action of the court in awarding to Edward Kaufman the right to the use of 1.2 second-feet of the waters of Pass Creek, with date of priority May 1, 1907.

It appears from the testimony that in 1901, Kaufman took out a small ditch heading in Pass Creek immediately above his land, with a carrying capacity of about 25 inches of water. The court decreed to Kaufman the right to the use of 25 inches, or .5 second-feet, with date of priority May 1, 1901, and to this award no objection is made. After using this ditch one or two years, Kaufman obtained water through another ditch known as the "Bucklin Ditch," which afterward became the property of the Wood Live Stock Company. It appears that thereafter the land of the Wood Live Stock Company and that of Kaufman were irrigated from the same ditch. It also appears that they used the water flowing in this ditch alternately by a system of rotation. The evidence is not definite as to the amount of water diverted through this ditch, the estimates varying from one to 1.4 second-feet. By the decree the court evidently awarded each of these claimants at least the full amount of the continuous flow of the water diverted by the so called Bucklin Ditch. This was error. The amount of water allotted to both claimants should not have exceeded the continuous flow of the water diverted by the Bucklin Ditch and applied to a beneficial use.

Moreover, a careful consideration of the evidence introduced in favor of the claim of Kaufman shows that it is insufficient to justify an award for any water over and above the 25 inches decreed to him, with date of priority May 1, 1901. He does not show that he applied any of it to a beneficial use. The full extent of his testimony is that he used it on his desert claim. The court was not informed as to what was the nature of the use made of it. In his cross-complaint he alleges that he conducted the water to his land for the reclamation and cultivation thereof, but his testimony does not show that he used it either in the reclamation or cultivation of his land.

Where one rests his claim upon an appropriation without compliance with the statute, one of the essential requisites to establish his claim is the application of water to a beneficial use, and where there is a total lack of evidence upon this point a decree awarding water to the claimant cannot be sustained. (See *Basinger v. Taylor,* 30 Ida. 289, 164 Pac. 522; *Pyke v. Burnside,* 8 Ida. 487, 69 Pac. 477; *Morris v. Bean et al.,* 146 Fed. 423; Long on Irrigation, 2d ed., secs. 111, 121 and 126; *Crane Falls etc. Co. v. Snake River etc. Co.* (on rehearing), 24 Ida. 77, 133 Pac. 655.)

With relation to the claim of the Wood Live Stock Company, there is no testimony as to the comparative length of time the water was used by either respondent Kaufman or the Wood Live Stock Company, and there is therefore not sufficient evidence upon which to base a decree as to the actual amount of continuous flow to which the Wood Live Stock Company would be entitled. If the use of water has been rotated, the trial court should so find and fix the rights between these parties, both as to amount and priority. The amount of land of the Wood Live Stock Company called in question by this award is forty acres. The court found that "there is now thirty acres of said land under cultivation, and it will require two years from the date of the decree herein, within which to bring the remainder of said tract under cultivation, and 1¾ miner's inches of water per acre, is necessary for the proper irrigation of said lands." The decree awarded to this claimant 1.4 second-feet, with date of priority June 1, 1900. The decree contained the following proviso: "Provided, however, that the said Wood Live Stock Company shall be entitled only to the use of 1¾ miner's inches per acre of such of said lands as shall be in cultivation, until the whole of said lands shall be in cultivation; and if the said defendant shall fail to bring said lands under cultivation, and make beneficial use of said water thereon within two years from the date hereof, it shall be deemed to have abandoned such part of said waters as have not been so used."

By Rev. Codes, sec. 4621, as amended by Sess. Laws 1913, chap. 35, p. 133, it is provided that in allotting the waters of any stream by the district court the amount allotted shall never be in excess of the amount actually used for the beneficial purposes for which the right is claimed. The section, however, contains the following proviso:

"Provided, that in the case of works capable of diverting more water than is applied to a beneficial purpose at the time the rights of the person or persons owning or using such works are adjudicated by the court, the right only to the water beneficially applied at the time of making such allotment shall be confirmed by the court, and the court shall ascertain the amount of water which can be diverted through such works in excess of such quantity beneficially applied, and shall set a time when such amount shall be applied to the beneficial purpose for which it is intended, which time shall not exceed six years from the date of the decree issued by such court under such adjudication, and any person using any of such water which was not beneficially applied at the time of such adjudication shall, before the expiration of the time set for such beneficial application, make proof of such beneficial use in the manner provided in section 3260 of the Civil Code, and such right, when confirmed in the manner provided in this chapter and chapter 2 of title 9 of the Civil Code shall relate to the priority established by such court, and if such application of any of such water shall be made subsequent to such date, then the priority of the right to the use thereof shall be determined in the manner provided in section 3261 of the Civil Code."

Under this section of the Code the court should not have decreed a right to the Wood Live Stock Company for an amount in excess of 52.5 miner's inches, or 1.05 second-feet, for use upon the thirty acres shown to have been in cultivation, even if there were no question as to a joint use of the water by the company and another claimant. This company not claiming under a permit, or by virtue of any statute of the state, the proviso above quoted is not applicable. It is

plain that the proviso is only applicable in cases where the litigant is in position to profit by the doctrine of relation. One claiming by appropriation merely, without compliance with the statutes of this state, is not so entitled.

In the opinion on rehearing in the case of *Crane Falls etc. Co. v. Snake River etc. Co., supra,* this court, at pp. 81 and 82, of 24 Ida., 133 Pac. 661, said:

"Under the laws of this state there are two methods of acquiring water rights: One is to follow the statutory procedure and file an application for water with the state engineer, in which case there is a vested right which dates its inception from the time of filing the application with the state engineer. The other is to divert unappropriated water and apply it to a beneficial use without making application to the state engineer, which right dates from the application of the water to a beneficial use. The statutory method is the exclusive method by which the right can relate back to the filing of the application with the state engineer. (See *Nielson v. Parker,* 19 Ida. 727, 115 Pac. 488.)"

See, also, *Sandpoint etc. Co. v. Panhandle etc. Co.,* 11 Ida. 405, 83 Pac. 347; *Basinger v. Taylor, supra; Pyke v. Burnside, supra.*

The proviso in the statute above quoted appears to have been intended to protect the rights of those who have initiated their claims under the statute and who have been made parties to a suit before the final completion of their claims by application to a beneficial use. The proviso protects such rights, and directs that proof of future beneficial use be made before the state engineer within the time specified by the court, in the same manner as proof would have been made had the suit not intervened.

Rev. Codes, sec. 4621, above referred to, was first enacted as a part of the act of 1903, which was designed to be a comprehensive act regulating the appropriation of the waters of the state. Sec. 41 of that act, Sess. Laws 1903, p. 252, provided that all rights to divert and use the waters of this state for a beneficial purpose shall hereafter be acquired and confirmed under the provisions of that act. While it was de-

cided in the case of *Nielson v. Parker, supra,* that it was not the purpose of the law, in view of the provisions of art. 15, sec. 3, of the constitution, to deprive an actual appropriator of water of his vested right to the use thereof, it seems clear that it was intended to provide an exclusive method by which an appropriator of water should be entitled to the benefit of the doctrine of relation. It seems necessary, therefore, to construe the proviso of that section as we have done in this case, in order to make the statute consistent with itself.

Samuel, Alfred L., George and John Goddard also appeal from certain portions of the decree. They specify as error that portion of finding No. 27, reading as follows:

"That about the year 1903, the persons and water users entitled to the use of the waters of the said Birch Creek, constructed a ditch about four and one-half miles above what is commonly known as the Richards' Ranch, running thence in a southerly direction parallel to said Birch Creek to a point where the said ditch intersected with said Birch Creek, about one-half of a mile above the said Richards' Ranch, for the purpose of saving and conserving the waters of the said stream."

In addition to the portion of the finding quoted, the court found further as follows:

"That about the year 1908, the said Samuel, George, John and Alfred L. Goddard, began the construction of a ditch leading from Birch Creek at a point about four and one-half miles above the headgate of the said People's Ditch, running thence parallel with Birch Creek for a distance of about four and one-half miles, at which point it intersects the said People's Ditch; that the said ditch so constructed was completed by the said Goddards about the year 1910, and is commonly known as the Goddard Ditch; that the said Goddard Ditch and the said People's Ditch, connected as aforesaid, forms a continuous ditch for a distance of about nine miles, and by the use of the same as a substitute for the natural channel of Birch Creek, there is conserved and prevented from waste approximately five cubic feet per second of time of the waters of said Birch Creek."

The judgment contained the following:

"It is further ordered, adjudged and decreed, that the defendants, Samuel, George, John and Alfred L. Goddard, be and they are hereby permitted to divert from the natural channel of Birch Creek, at a point about nine miles north of the J. R. Richards ranch, through the ditches commonly known as the Goddard Ditch and the People's Ditch, all of the waters flowing in said stream at said point for the purpose of supplying the said J. R. Richards ranch, with the amount of water herein decreed to it, and conserving such water and preventing the loss and waste thereof; provided, however, that the said Samuel, George, John and Alfred L. Goddard, shall at all times keep and maintain the said Goddard Ditch and the said People's Ditch in good repair, so as to carry all the waters of said stream without loss or waste, except natural evaporation and percolation; and if said Samuel, George, John and Alfred L. Goddard, or either of them, shall suffer or permit any of such waters to waste from said ditches, then said waters and the whole thereof shall be returned to the channel of said stream."

These appellants claim the right to appropriate and use the amount of water conserved and saved by the construction of the ditches referred to in the foregoing findings and decree. On the evidence, the finding of the court as to the persons who constructed the ditch will not be disturbed. The finding of the court, however, is not sufficiently definite to found a judgment thereon permitting these appellants to divert from the stream any of the waters conserved by the construction of the ditch mentioned in the findings. The issue was presented to the court by the cross-complaints of these appellants, and requires a definite finding on the part of the trial court. The court must find what portion, if any, of the water which it did find was conserved by the construction of the ditches was due to the efforts of these appellants. (*Pomona L. & W. Co. v. San Antonio Water Co., supra.*) If the court should find that the efforts of these appellants have effected a saving, the water so conserved should be decreed to them and apportioned to them according to their respective

rights. It is evident that the justification for that portion of the decree quoted above, granting to these appellants the right to carry the water through their canal for the purpose of supplying the J. R. Richards right, is that certain water may be saved and conserved from loss by seepage and evaporation. There is no incentive for the accomplishment of such saving of water, unless the persons who have saved the same shall reap the benefit of their efforts. The difference between the amount of water if permitted to flow in the stream at the headgate of the Goddard ditch necessary to supply the Richards right, and the amount necessary to supply the Richards right if carried through the canal, represents the amount saved, and the amount so saved should inure to the benefit of the parties who have accomplished the saving.

These appellants also specify as error the finding of the trial court to the effect that Agnes B. Reno, on May 1, 1898, diverted and used of the waters of Birch Creek .8 second-feet on a certain eighty-acre tract of land, and that on April 1, 1910, she diverted and used an additional .8 second-feet on the same eighty-acre tract, and the decree founded thereon granting her the right to such waters on the respective priority dates above stated.

It appears that this claimant had a desert entry of 320 acres, and became the owner by purchase of a right known as the "Tyler right," for 6.4 second-feet of water awarded by the decree of 1894. The evidence shows that she used the Tyler right on what was supposed to be her desert entry. About the year 1910, she discovered that her house and improvements were not on the desert entry, and she thereupon proceeded to obtain title to the eighty acres of land above mentioned, upon which her improvements stood, by means of filing what is known as "scrip" therefor. A portion of the scrip eighty-acre tract was in cultivation prior to the time she obtained title thereto, having been cultivated under the belief that it was part of her desert entry. Under the evidence in this case, it is apparent that this claimant did not attempt to obtain a separate right for the eighty-acre tract until she discovered that it was not included in her desert entry, and that

water used in the irrigation thereof prior to that time was a portion of that included within the Tyler decree. She was not entitled to an award of a separate right for this eighty-acre tract until she made an appropriation therefor.

It appears from the record that the claimant may have applied to the state engineer for a permit to appropriate water for this eighty-acre tract, but no such permit was introduced in evidence. The decree of water for the irrigation of this eighty acres must therefore be based upon the amount actually applied to a beneficial use. The court found that one inch per acre, the equivalent of a second-foot for each fifty acres, was required for the proper irrigation of this land. There is no evidence in the record to justify a decree of water right for this land with date of priority before the year 1910, or for an amount more than a second-foot, since the evidence shows that but fifty acres were in cultivation.

It appears from the record that respondents Franklin A. Reno and Jennie C. Reno each had a homestead entry of 160 acres, and each a desert entry of the same amount, but not contiguous to their homestead entries. The homestead entries were made in February, 1904. It appears from the testimony that canals and laterals were constructed to these homesteads in the year 1904, and water was permitted to flow over the same for the irrigation of the natural grasses growing thereon. The decree for water rights for these homesteads is based upon the claim of actual appropriation therefor, without reference to the statutes, and the court awarded to each 3.2 second-feet, with date of priority in the year 1904. It further appears that there was no cultivation on either of these tracts until the year 1907. The awarding of these decrees is specified as error.

This court has held that the use of water for the irrigation of the natural grasses is a beneficial use, and will sustain a decree confirming an appropriation of water therefor. (*Pyke v. Burnside, supra.*) But in this case we have failed to find any evidence showing the amount of water applied to the homestead entries in question during the years 1904, 1905 and 1906; nor is there any evidence at all definite as to

whether the whole, or a portion only, of said tracts were irrigated during those years.

In the syllabus prepared by the court in the case of *Lee v. Hanford,* 21 Ida. 327, 121 Pac. 558, it was said:

"The quantity of water decreed to an appropriator, in an action wherein priority of appropriation is the issue, should be upon the basis of cubic feet per second of time of the water actually applied to a beneficial use, and should be definite and certain as to the quantity appropriated and necessarily used by the appropriator."

Water rights are valuable property, and a claimant seeking a decree of a court to confirm his right to the use of water by appropriation must present to the court sufficient evidence to enable it to make definite and certain findings as to the amount of water actually diverted and applied, as well as the amount necessary for the beneficial use for which the water is claimed. In this case, we do not think the evidence is sufficiently definite to enable the court to allot water for the two homestead tracts in question with date of priority prior to the year 1907.

The claim of Agnes M. Reno for her homestead and desert entries was also called in question by this appeal.

Bearing in mind that all of the claims of the three respondents last above mentioned are based upon the actual diversion of water, and application to a beneficial use, it appears that the awards to each of these claimants gives them a date of priority in advance of the actual application of the water to a beneficial use of which there is any definite evidence, and in amounts greater than that actually applied from year to year.

The findings and decree with reference to the claims of these three respondents, last named, should be modified to conform with the principles announced in this opinion.

The decree awarding to Lillian M. Watts the use of certain waters of the stream is also called in question by this appeal. The court awarded to this respondent the use of 1.3 second-feet, or 80 inches of water, with date of priority June 1, 1909. This discloses an error in calculation, since 1.3 second-feet of

water is equivalent to 65 inches. The court evidently intended to decree to, this respondent 1.6 second-feet. The court found that a portion of her land only was under cultivation, and the decree contains the following proviso:

"Provided, however, that the said Lillian Watts shall only be entitled to the use of one miner's inch per acre of said waters, for the irrigation of as much of said lands as are in actual cultivation, until the whole thereof shall be placed in cultivation; and if the said defendant shall fail to bring said land under cultivation, and make beneficial use of said waters thereon within two years from the date hereof, she shall be deemed to have abandoned such part of said waters as have not been so used."

The court found that one miner's inch per acre was necessary for the proper irrigation of her lands. This respondent was the owner of a permit granted by the state engineer for the appropriation of waters for the irrigation of the land in question, and her attorneys stated that they claimed under the permit. The cross-complaint of this respondent, however, made no reference to the permit and claimed by virtue of actual appropriation of water.

The decree with reference to Lillian M. Watts cannot be sustained. Under Rev. Codes, sec. 4621, hereinbefore referred to, the court should have allotted to this respondent only the amount of water actually applied to the beneficial purposes for which it was claimed. Had this respondent set out her permit in her cross-complaint, and her substantial compliance with the statute, the proviso contained in Rev. Codes, sec. 4621, would apply in her case. This respondent, if she desires to do so, should be permitted to amend her cross-complaint so as to allege her ownership of a permit from the state engineer for the purpose of diverting and applying water to the tract of land in question, and her compliance with the statute. In case the court should find that she has substantially complied with the statute, and the terms of the permit, it should then proceed to determine the carrying capacity of her ditch and fix the time, not exceeding the time specified in the statute, in which she may beneficially

apply the water to the remainder of her land. She would then be in a position, upon the completion of the application of the water to the beneficial use specified in the decree and permit, to make proof thereof as directed by the statute.

Appellants in both appeals, by several of their specifications of error, assign as reason why the court's rulings were erroneous that the various · claimants attempted to appropriate the water of Birch Creek, and its tributaries, at a time when there was no water therein subject to appropriation, claiming that there was not sufficient water in the stream to supply the rights decreed in 1894.

This does not constitute a good reason for an assignment of error. In the first place, the court is not permitted to confirm a right to the use of water without proof in support thereof sufficient to show that the water has been appropriated and applied to a beneficial use. In the second place, the court by its decree determines the relative priorities of rights, and in case any prior rights are abandoned, or are not being used for any season, or a portion thereof, the right of the users to have their claims supplied from the stream adjusts itself automatically.

The case is remanded to the lower court, with instructions to modify its findings of fact, conclusions of law and decree, with reference to the awards to the appellants and the various respondents which have been called in question by the two appeals, to conform to the opinions herein expressed. Should the court find it necessary to permit amendments to the pleadings, or to take additional evidence, it is directed so to do in order to enable it to determine the facts and enter a proper decree herein. Costs awarded to appellants.

Morgan, J., concurs.

Budge, C. J., sat at the hearing but took no part in the opinion.