Decided 23 January, 1906.

## MORGAN v. SHAW.

83 Pac. 534.

WATERS — INITIATION OF APPROPRIATION — RIGHT BY RELATION.

1. The right to the use of the waters of a stream relates back to its initiation by an appropriator, and not to the time when his ditches were completed, provided the work of digging them was prosecuted with reasonable diligence.

EVIDENCE OF PRIORITY OF APPROPRIATION.

2. Where the prior appropriation of waters of a public stream is in issue, declarations of defendant that his right to the use of the water was a subsequent one is sufficient to show a prior appropriation by plaintiff when corroborated by the fact that for 18 years defendant permitted sufficient water to flow in the channel of the stream to irrigate plaintiff's land.

RIPARIAN RIGHTS — COMMON-LAW DOCTRINE — PRIOR APPROPRIATION.

3. Where, as in Oregon, the common-law doctrine of riparian rights, as modified by the rule of prior appropriation, is recognized, when a prior settler on public land through which a stream flows appropriates the waters of such stream for irrigating purposes, the stream is not flowing through public lands at the time of a diversion of the water thereof made by a subsequent settler.

WATERS — EFFECT OF APPROPRIATION ON ADJACENT LAND.

4. An appropriation of water is a grant by the general government to a settler on public land of the right to its use from a nonnavigable stream, to the injury of all public land above the point of diversion, which may be within or beyond the boundaries of the settler's claim.

From Baker: ROBERT EAKIN, Judge.

This is a suit by Anna M. Morgan, Maud J. Estes, and Albert J. Morgan, the widow and heirs at law respectively of William H. Morgan, deceased, to enjoin the defendant, John B. Shaw, from interfering with the flow of water in the channel of a nonnavigable stream to the head of plaintiffs' ditches, and to recover damages caused by his diversion of such stream. The complaint states that plaintiffs by inheritance are the owners in fee and in the possession of 160 acres of land, particularly describing it, in Baker County, and that in 1884 their predecessor in interest diverted 110 inches of the water of the Middle Fork of Burnt River and made a prior appropriation thereof to such premises, where that quantity has ever since been used, until 1902, and thereafter, when the defendant unlawfully diverted all the water from that stream to their

damage in the sum of $995. The answer denies the material allegations of the complaint, and avers that the defendant is the owner of 320 acres of land, describing it, in that county, through which such fork flows, and that in May, 1884, he made a prior appropriation of the water of that stream, to the extent of 550 inches, by diverting the same at points on the public domain, which quantity he thereafter continuously used in irrigating his premises. The reply having denied the allegations of new matter in the answer, the cause was referred, and from the testimony taken the court found that the plaintiffs and the defendant, as parties, had an equal right to the use of the water, and that by the defendant's diversion thereof plaintiffs had sustained damages in the sum of $100, and, a decree having been rendered in accordance therewith, both parties appeal.                    MODIFIED.

For plaintiffs there was a brief over the name of *Hart & Smith*, with an oral argument by *Mr. William Smith.*

For defendant there was a brief and an oral argument by *Mr. A. B. Winfree.*

MR. JUSTICE MOORE delivered the opinion of the court.

The testimony shows that the Middle Fork of Burnt River, a nonnavigable stream, flows southeasterly in a well-defined channel through defendant's land, and thence to and through plaintiffs' premises. In May, each year, the snow melting in the mountains where this fork has its source, creates a volume of water of about 400 inches which continues to flow undiminished about a month, when it begins to subside, and in July the stream affords only about 60 inches, which stage is not increased until the drought is broken. The lands of the respective parties are arid, and, without the artificial use of water, unproductive, but, when properly irrigated, they yield valuable crops, hay being the chief product. Dr. E. J. Stevens,

in May, 1884, established his residence upon the land now owned by plaintiffs, and soon thereafter dug ditches and diverted from such fork water which has ever since been used in irrigating such premises, except in 1902, and the seasons following, when the defendant, by diverting all the water, interfered with such use. Stevens made final proof in support of his entry, and, having received a United States patent for this land, conveyed the premises, December 10, 1889, to William H. Morgan, who died seised in fee and in possession thereof, February 3, 1893, whereupon the plaintiffs, as his widow and heirs respectively, succeeded to his estate therein.

The defendant, as a witness in his own behalf, testified that in May, 1884, he dug a ditch a few rods in length whereby water was diverted from the Middle Fork of Burnt River and flowed into a small swale on land then selected and now owned by him, whence the water returned to the stream from which it was taken ; that in 1885, he extended such ditch, and used the water flowing therein to irrigate his land, and dug other ditches by means of which he was enabled to grow crops by the artificial use of water ; and that his first ditch was prior in time to the ditch constructed by Dr. Stevens. This witness further testifies that, having made an appropriation of the water of the stream mentioned, he returned to the premises now owned by plaintiffs, and found Dr. Stevens and men employed by him in digging his ditch. George Elliott, a witness for plaintiffs, testified that as Dr. Stevens' team was light, he was sent by his employer with a heavier team, to plow a ditch on the land now owned by plaintiffs, and referring to a memorandum made at that time, he said it was June 2, 1884, but that he had no recollection of seeing the defendant when he was working there.

The defendant offered in evidence the deposition of Thomas Gardner, taken at Omaha, Nebraska, to the effect

that the deponent, in May, 1884, assisted the defendant about two days in digging the first ditch from the Middle Fork of Burnt River, whereby water was diverted for irrigation, and that Dr. Stevens did not begin the construction of his ditch until the fall of 1884, or the following spring. The witnesses George Whited, Michael Rouse and Daniel Elliott, severally testified that prior to the defendant's diversion of all the water from the stream, he admitted to each that plaintiff's right to the use of the water for irrigation was superior. The defendant denies the statements so imputed to him, and asserts that, though he, at Mrs. Morgan's request, permitted the water to flow in the channel of the stream to her premises prior to 1902, his acts in these respects were neighborly only and with no intention to relinquish his rights.

1. Dr. Stevens' ditches were completed about June 15, 1884, whereby water was diverted from the stream, and used to irrigate crops grown on the land now owned by plaintiffs. The right to such use relates back to its initiation by Dr. Stevens, and not to the time when his ditches were completed, assuming as we must, that the work of digging them was prosecuted with reasonable diligence.

2. It nowhere appears in the evidence that the ditch which the defendant dug in May, 1884, and which was never seen by any person, except himself and Thomas Gardner, was commenced before Dr. Stevens began the construction of his ditches. The defendant's admission to the witnesses named that Mrs. Morgan's right to the use of the water was first and his second concedes that Dr. Stevens initiated a prior appropriation. We adhere to the general rule that testimony of the oral declarations of a party against his interest should be viewed with caution, and place our decision herein on the corroborating fact that from 1884 to 1902, a period of 18 years, the defendant permitted sufficient water to flow in the channel of the

stream to irrigate the arable land now owned by plaintiffs. Gardner's declaration under oath, that Dr. Stevens did not begin the construction of his ditches until the fall of 1884 or the spring of 1885, is so at variance with the fact, admitted by the defendant, that these ditches were completed June 15, 1884, as to render his deposition of but little value in determining the truth.

3. Much importance seems to be placed by defendant upon the averment in his answer that he diverted water from a stream at a point on the public domain, and that as the plaintiffs failed to allege such fact in the complaint, he, having given evidence thereof at the trial, had established the better right. This contention is without merit, for where, as in this State, the common-law doctrine of riparian rights, as modified by the rule of prior appropriation, is recognized, it follows that, as Dr. Stevens was a prior settler on public land through which the Middle Fork of Burnt River flowed, and his title to the premises secured from the United States related back to the date of his settlement, that stream was not flowing through public lands when the defendant made his diversion: *Brown* v. *Baker*, 39 Or. 66 (65 Pac. 799, 66 Pac. 193).

4. An appropriation of water is a grant by the general government to the settler of the right to its use from a nonnavigable stream, to the injury of all public land above the point of diversion, which may be within or beyond the boundaries of the settler's claim. The evidence shows that plaintiffs have in cultivation about 90 acres of land, which requires an inch of water, under six-inch pressure, properly to irrigate an acre thereof.

The decree of the lower court will therefore be so modified as to allow to plaintiffs for the irrigation of their land, this quantity of water as a prior appropriation, and the defendant will be perpetually enjoined from interfering

with the flow of the volume so awarded in the channel of the stream to the head of their ditches; the plaintiffs to recover from the defendant the sum of $100 for the damages sustained by reason of his diversion, and their costs and disbursements in this court and in the court below.

MODIFIED.