[No. 4928.]

RIPLEY ET AL. v. THE PARK CENTER LAND AND WATER
COMPANY.

1. **Appellate Practice—Findings on Conflicting Evidence—Not Disturbed on Appeal.**

The findings of a trial judge, who saw the witnesses and heard them testify, based on conflicting evidence, will not be disturbed on appeal.—P. 132.

2. **Water Rights—Water from Mines—Appropriation—Statutory Construction.**

One who conducts water from mines into a natural stream with the intent to appropriate it for irrigation purposes, and who actually makes the first appropriation thereof, is entitled to such water under § 3177, Mills' Ann. Stats., providing that water flowing from any mine into a natural channel may be taken and used the same as that of natural water courses.—P. 133.

3. **Same—Initiation of Rights.**

Where it becomes necessary from time to time to construct new tunnels, each lower than the former, in order to drain mines, and a person appropriated the water obtained from the first tunnel for irrigation so long as it flowed, and continued to attempt to likewise utilize that from the succeeding tunnels, such person's appropriation dates back to the time of the first appropriation.—P. 134.

*Appeal from the District Court of Fremont County.
Hon. M. S. Bailey, Judge.*

Petition by The Park Center Land & Water Company against Aaron Ripley, A. S. Sage, O. C. Louck, N. W. Felch, J. August Smith, J. N. Tomlinson and Anna Gardner to obtain an adjudication to the petitioner of a priority of right to the use of water for irrigation. From a decree for petitioner, respondents appeal.          *Affirmed.*

Mr. JAMES T. LOCKE, for appellants.

Mr. CHARLES E. WALDO and Mr. CLYDE C. DAWSON, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This is a special proceeding under the statute to obtain a decree adjudicating to the petitioner a priority of right to the use of water for irrigation.

In 1903 appellee, as petitioner below, filed its statement with the clerk of the district court of Fremont county claiming to have made an appropriation of water for irrigation. In 1904 it filed in the district court of that county its petition in the pending proceeding alleging, *inter alia,* that after the rendition of a final decree of that court which, in appropriate proceedings under our irrigation acts, established the relative priority of rights to the use of water for irrigation in water district No. 12, petitioner made an appropriation of water for irrigation which in no way interfered or conflicted with those adjudicated by the former decree, and prayed for a decree establishing its rights in accordance with the statute in such cases provided.

The alleged right pertains to artificial waters which, by petitioner's exertions and those of its grantors, have been produced and added to the natural flow of the stream as the result of the drainage of various mines in the Cripple Creek mining district, and which, after they reached the bed of the stream, were by it appropriated.

This proceeding was conducted according to the statute. Some of the respondents appeared and denied petitioner's claims. A large volume of evidence was taken, and the court found in favor of petitioner and rendered a decree accordingly. Therefrom certain of the respondents have brought the case here by appeal.

The court specifically found from the mass of evidence: That the petitioner was not a party to the former decree; and that the waters in controversy

were, by its exertions, artificially produced as the result of draining mines, and by a tunnel discharged into the natural stream called Oil creek, or Four-Mile creek, which is the appellants' source of supply, all of whose natural waters had previously been appropriated by them and others. The court found that such waters were subject to appropriation, and had been first appropriated by the petitioner, after having been produced and raised to the surface, all of which had thus been contributed to the stream since the former statutory decree was rendered, and formed no part of its natural flow, and never would have come into the stream in any way had it not been for the efforts of petitioner, except to the extent of four cubic feet of water per second of time, which is the amount of water which directly or indirectly, as the court found from the evidence, would naturally have reached the bed of the stream had not the mines been drained. Since four cubic feet per second would have naturally found its way into the stream, had not the mines been drained, and since the court further found that of the volume of additional water to which petitioner was entitled as it passed from the portal of the tunnel, ten per cent. thereof would be lost from evaporation, seepage, and other natural causes between the portal and the headgate of its ditch, petitioner was allowed to withdraw from the stream only ninety per cent. of all waters discharged from the tunnel, in excess of four cubic feet per second of time.

Upon such findings the court, in virtue of its contribution of artificial water to the stream, and the fact that in October, 1895, it made appropriation thereof before the rights of any other person attached, decreed that petitioner has the exclusive right to use and collect the same at the portal of the tunnel, and to cause such waters thus collected to

flow down and into the channel of Four-Mile creek·
to the headgate of its ditch without interference
by other persons, and to withdraw at the headgate
of its ditch the ninety per cent. mentioned.

The specific objections ·which the appellants
make to this decree are thus stated:    (1) That the
water flowing through the drainage tunnel and ad-
judicated to appellee was not artificial water, but
a part of the natural flow of Four-Mile creek which
had theretofore been appropriated by appellants and
others using water from the creek, and which had
been decreed to them in the former statutory pro-
ceeding; (2) that, if it was not properly a part of
the natural flow of the creek, then it was water
which had been produced in the earth by means of
artificial work, and, as such, may not be decreed in
a proceeding of this sort under the so-called irriga-
tion acts; (3) but if this is not so, and if it is not
part of the natural flow of the stream, then it is
water covered by our drainage statute, and declared
thereby to be subject to be taken and used the same
as the water of a natural stream, and therefore sub-
ject to appropriation, and cannot be acquired, as at-
tempted here, as private property; (4) that if this
so-called tunnel water is subject to appropriation,
the evidence shows affirmatively that the appellee
had never made any beneficial application of the
same before the filing of the petition, and therefore
cannot have a decree therefor as a perfected appro-
priation at this time.

The evidence in some particulars is conflicting,
in others preponderates in favor of the petitioner.
At all events, the trial judge, who saw the witnesses
and heard them testify, found in its favor, and with
such findings we cannot interfere.   We may add,
however, that the parties concede that in its natural
state this water which has been drained from ·the

mines was originally inclosed in à basin whose walls are granite which is practically impervious to water; and the evidence tends to show, and the court found, and the parties practically concede, as we understand, that, with the exception of such quantities as overflowed from the basin at low places in the rim and through fissures in the granite, none of it reached the bed of the natural streams in the adjacent valleys. The estimate of the court was that four cubic feet per second of time would thus have reached the streams had not these mining operations been prosecuted.

The court found, then, on evidence somewhat conflicting, that when the former statutory decree was rendered, by which certain awards were made to appellants, none of this water, with the exception of the four cubic feet per second of time, was allotted to the appellants, for none of it, save the amount specified, could or would have reached the stream from which they obtained their supply.

It is not necessary to rest the judgment solely, or at all, on petitioner's contract right with the owners of the mines which purported to grant to it, as against all others, the right to collect and take this water at the portal of the tunnel; for the court found that the petitioner not only conducted this artificial water into the natural stream with the intention there tó appropriate it, but also there actually made the first appropriation thereof after it reached the same. Our statute has made such water the subject of appropriation.—2 Mills' Ann. Stats., § 3177. We have held that such contributions to a natural stream belong to the one who made them.—*P. V. Irr. Co. v. Buckers, etc., Co.,* 25 Colo. 77. Certainly the fact that petitioner has contributed this water to the stream does not tend to weaken its right thereto as a first appropriator.

The further contention of appellants, that the evidence affirmatively shows that at the time of the filing of its petition the petitioner had not made a successful appropriation of the water to a beneficial use, is not tenable. The court, upon conflicting evidence, has found against their contention.

It appears that a number of tunnels were run for the purpose of draining the mines in the Cripple Creek district, and that the El Paso drainage tunnel, from which the water now issues, was the last of several from which the petitioner collected and conducted it into the natural stream. The evidence shows that in time a drainage tunnel exhausts the supply of water from the earth above, and later it becomes necessary to drive other tunnels at lower levels, and as they succeed in draining the ground above, still others are run farther down the mountain side. Several years before the filing of this petition, the appellee had built its ditches and reservoirs and attempted to utilize the water of the earlier drainage tunnels, and had enjoyed the use thereof except at times when interference therewith was made by appellants and other appropriators. The inception of appellee's right was not at the time of the construction of the El Paso drainage tunnel, but, by reason of the facts to which we have just alluded, relates back to the time at which it sought to utilize water from the earlier and higher tunnels before the petition was filed, or the El Paso tunnel was run.

The district court seems to have given much thought and attention to the evidence produced before it, and as its findings are supported thereby, and as we are of opinion that the rights in controversy can be determined in this proceeding, the judgment and decree are affirmed.    *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.