UNITED STATES v. DOMINION OIL CO. et al.

(District Court, S. D. California, N. D. March 5, 1917.)

No. 58.

1. INJUNCTION ☞155—RECEIVERS ☞46—SUIT BY UNITED STATES FOR POS-SESSION OF OIL LANDS—PRELIMINARY INJUNCTION.

In a suit by the United States to recover oil land, which was subject to the withdrawal order of the President of September 27, 1909, but in the possession of defendants, claiming under prior locations, and who have drilled and are operating producing wells thereon, the court will not grant a preliminary injunction to stop such operation, which would work irreparable injury and be detrimental to whichever party is successful, even though under prior decisions it seems probable that complainant will recover; nor will it appoint a receiver to operate the wells, where it is being done by defendants in an efficient and economical manner, if they are able and willing to furnish a bond to pay any judgment which may be recovered against them because of their continued operation.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 339; Receivers, Cent. Dig. § 70.]

2. UNITED STATES ☞126—ACTIONS BY—RIGHTS AS LITIGANT.

The government of the United States in such case possesses no greater or different rights than a private litigant, seeking similar relief.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 115.]

3. INJUNCTION ☞137(4)—PRELIMINARY INJUNCTION—RESTRAINING USE OF PROPERTY BY CLAIMANT IN POSSESSION.

Possession of property under claim of title, with the accompanying presumptive right of ownership, carries with it a right to the use and enjoyment of such property until, by due process of law and after full hearing, it has been finally adjudged that such claim of title is unfounded.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 309.]

In Equity. Suit by the United States against the Dominion Oil Company and others. On motion by complainant for preliminary injunction and receiver. Motion denied, on condition.

E. J. Justice, of Greensboro, N. C., A. E. Campbell, of San Luis Obispo, Cal., and Frank Hall, of San Francisco, Cal., for the United States.

A. L. Weil, of San Francisco, Cal., Andrews, Toland & Andrews, of Los Angeles, Cal., and J. R. Pringle, of San Francisco, Cal., for defendants.

BLEDSOE, District Judge. This is a "withdrawal case," similar in all its essential attributes to cases heretofore considered by this court (U. S. v. McCutchen [D. C.] 234 Fed. 702; same case on final hearing [D. C.] 238 Fed. 575; United States v. Stockton Midway, 240 Fed. 1006), involving a quarter section of land in the California oil fields. The matter arises upon application by the government for an injunction and receiver pendente lite.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] As indicated by the character of the case, though location notices had been posted, at the time of the executive withdrawal order of September 27, 1909 (see U. S. v. Midwest Oil Co., 236 U. S. 459, 35 Sup. Ct. 309, 59 L. Ed. 673), no discovery of oil had been made, and neither on, nor before, nor for a considerable period after, the date mentioned, was "diligent prosecution of work leading to a discovery of oil or gas" in progress on the property. A well was begun and oil actually discovered therein in 1910. Subsequently several other wells were drilled by defendant operating companies, and production therefrom is now being had in substantial quantities. No fraud of any sort is charged in the bill with respect to the acquisition or asserted title on the part of defendants to the land. As affects the ownership of and right to the land, the only questions involved and to be tried upon final hearing are whether defendants had made a discovery on the land prior to the withdrawal, or were on that date and continuously thereafter engaged in diligent prosecution of work leading to such a discovery.

Defendant operating companies, against whom provisional relief is asked, are asserted to be "solvent" concerns, meaning, presumably, that they have a present ability to pay their lawful obligations. They are engaged in operating the properties involved—are taking oil therefrom and converting it or its proceeds to their own use. This is being done upon property which, under the showing thus far made, probably on final hearing will be adjudged to belong to the government, in virtue of its proprietary ownership thereof and withdrawal of the same from public settlement previously to any valid mineral location thereon. U. S. v. McCutchen, supra; U. S. v. Stockton Midway Co., supra. Ordinarily, of course, in such an instance, the court would enjoin the further appropriation of the substance of the property—the thing which gives it its value, viz. its oil content—as constituting waste. The court, however, feels impelled to take judicial notice of the fact, gleaned from evidence adduced in these oil cases, that upon the sinking of a well into the oil sands, and the consequent production of oil therefrom, a stoppage of the operations of the well almost inevitably produces irreparable as well as incalculable injury to the property. This result accrues because of an infiltration of water into the oil sands, because of interference with the established channels conveying the oil toward the well, and, not infrequently, because of depletion of the oil measures through operations on adjoining properties. Under the circumstances, then, the court will not, even in the face of the obvious waste being committed, issue its injunction. So to do would be to damage both parties and benefit neither. In addition, for the reasons above adverted to, so to do would be to enjoin the defendants from doing the precise thing the government, from motives of obvious self-defense, would be compelled to do, were it even now in possession of the property.

[2] This leaves the question of whether or not a receiver for the property should be appointed. Suggestion has been made in these oil cases that, in consequence and in furtherance of the announced

and commendable conservation policy of the government with respect to its oil lands in connection with its naval reserves and otherwise, the court ought, practically in every instance, to appoint its receiver pendente lite to operate and control oil properties upon which wells have been sunk by operating companies, who apparently are acting without right as against the proprietary claims of the government. Such suggestion, however, has not found favor with this court. I conceive it to be clearly established, both upon reason and authority, that the government, in such a case as this, and even under circumstances so persuasively in its favor, possesses no higher or different rights than a private individual seeking similar relief would possess. The fact that the securing or conserving of oil as a fuel for its navy, whereby it may properly defend or even perpetuate itself, is involved, does not add to its rights in this court nor change its character as a suitor. What it may do because of military necessity through its executive branch does not here concern us.

Unless we are to disregard established and accepted canons of constitutional guaranties and overlook fundamental features of the social contract, in a court of justice, due and proper attention at all times, even as against the proprietary claims of the sovereign government, must be accorded to the rights of private property; an individual in the ownership of his private property is just as much entitled to protection against trespass where the government is involved as he is where other individuals are involved. Acting through its judicial arm, the government has no greater license to violate his rights, which are guaranteed in the fundamental law of the land, than has a private party. Because of such considerations, this court, in this as in other instances of a similar nature, feels it its duty to refrain from appointing a receiver, except in the event that such appointment is strictly necessary in order that the fruits of a judgment, probably to be recovered by the party applying for such appointment, may not be lost.

[3] Possession of property, with an accompanying presumptive right of ownership, such as exists in the case at bar, carries with it a right to the use and enjoyment of such property until by due process of law and after full hearing it has been finally adjudged that such possession and claim of title are unfounded. The court should not, even by its mere provisional decree, seek to interfere with such substantial right of enjoyment, except in the face of the strict necessity which demands such course. As was so aptly said by the Supreme Court of Georgia, in Crawford v. Ross, 39 Ga. 44:

"The high prerogative act of taking property out of the hands of one, and putting it in pound, under the order of a judge, ought not to be taken, except to prevent manifest wrong, imminently impending."

With the sentiment and spirit of that declaration of the law I am in entire accord. The evidence taken at the hearing shows that, though the defendant operating companies are actually operating producing wells upon this land and removing the oil therefrom, yet they are doing this in a satisfactory, efficient, and economical manner. They are doing it just as capably, just as agreeably to the rights of the gov-

ernment in this respect, as a receiver or the government itself could do it. The court will take judicial knowledge of the fact that there are but a very few purchasing agencies in the California oil fields, and it will take judicial knowledge of the fact, as, in fact, it is to be presumed, that adequate records of production and sales of oil are made from day to day, in due course. There can be no doubt, therefore, in my mind, that, in so far as the wells themselves and the question of the amount of oil taken therefrom are concerned, the rights of the government, if it be successful upon final hearing, will be as well taken care of under present management and operations as if a receiver were in charge.

Assuming the government to be successful, there will be, however, in due course, an accounting between it and these defendants. It will not do to say that, because they are solvent now and have solvent stockholders, the government is to be required to submit to a suit in the future, either against the respective defendants or as against their stockholders upon a statutory liability. The rights of the government require that its claims and its ability to recover ample and adequate restitution from the defendant companies, in the event that it is successful on final hearing, should be recognized and made secure at this time. Though the defendant companies are solvent now and have a present ability to pay their debts, that in itself is no proof, nor at all persuasive, of the fact that a similar ability would exist at some distant point in the future, especially when their probable liabilities to the government are increasing with each day's operations.

My conclusions, then, are that it would be unwise to issue an injunction; the necessities of the case as now existing do not require the appointment of a receiver to manage and operate the property; some indemnity, however, should be provided for the government, so that it may reasonably expect restitution in the event of its ultimate success. In this behalf it would seem proper that the respective operating defendants should furnish a bond, to be renewed from year to year, conditioned that they will pay to the government the amount of any judgment it may secure as against them because of mineral hereafter to be extracted from the land in question and appropriated to their own use. If the parties can stipulate as to the form and amount of such a bond, the court will be glad to enter an order in accordance therewith. If it be impossible for them to agree, the court itself will take evidence and frame an appropriate order. In the event of a refusal, or the inability, of the respective defendants to give such bond, the court will order the impounding of the oil obtained from the premises, or the money derived therefrom, or, as a last resort, but as the only one properly protective of the rights of the government, will appoint a receiver as in other cases.

Application for either one of the alternative orders above mentioned may be made to the court, and if not so made within 15 days from date hereof the order last mentioned will be entered.