(No. 5445. June 2, 1931.)

PIONEER IRRIGATION DISTRICT, Respondent, v. AMERICAN DITCH ASSOCIATION et al., Defendants; UNITED STATES OF AMERICA, Intervenor and Appellant; NEW YORK IRRIGATION DISTRICT and BOISE–KUNA IRRIGATION DISTRICT, Appellants.

[1 Pac. (2d) 196.]

734

Oppenheim & Lampert, H. E. Ray, United States Attorney, B. E. Stoutemeyer, District Counsel, United States Bureau of Reclamation, G. W. Grebe and Charles P. McCarthy, for Appellants.

Scatterday & Stone, Fremont Wood, T. L. Martin, Frank T. Wyman, J. M. Thompson and Frank T. Wyman, Jr., for Respondents.

McElroy & Chalfant, *Amici Curiae.*

GIVENS, J.—January 18, 1906, there was rendered in the district court for Canyon county, the Stewart Decree, fixing the priorities and duty of water of all of the then users of water from Boise River. This decree was affirmed by the supreme court as to priorities, but reversed as to the duty of water. (*Farmers' Co-operative Ditch Co. v. Riverside Irr. Dist.*, 16 Ida. 525, 102 Pac. 481.) That action is still pending in the trial court. Thereafter, in July, 1913, the instant action was instituted for the pur-

pose of determining the priorities and duty of water of those rights accruing since the Stewart Decree, or not therein finally determined.

The United States, not a party to the former suit, but by reason of its subsequent construction and ownership of a federal reclamation project, and succession to, and retention of, part of the interests of the New York Canal Company, a party to the former suit, intervened herein. The New York Irrigation District and the Boise-Kuna Irrigation District acquired the portion of the interests formerly held by the New York Canal Company, not transferred to the United States, and not now retained by it. These three parties, appellants, contest certain issues with respondents, three irrigation districts; all other Boise water users, though made parties and served, have in effect withdrawn from the conflict.

The three respondents were all granted certain rights under the Stewart Decree. As subsequently acquired additional rights, the court herein awarded the Pioneer Irrigation District 306.56 second-feet with a priority of April 1, 1905, and 54.5 second-feet, with a priority of April 1, 1908; and the Farmers' Co-operative Ditch Company 154.455 second-feet with a priority of April 1, 1905; based on findings and conclusions that since the former decree they had under the so-called constitutional, as distinguished from the statutory method of appropriating water, diligently enlarged their ditches, and actually diverted and applied to a beneficial use the amounts of water above stated, as of the dates given.

█ Contrary to appellants' contention, the evidence is sufficient to sustain these awards; this method of appropriation contemplates no waste of water, nor was any waste shown herein, and such method has long been sanctioned and upheld by decisions of this court and courts of other states adhering to our theory of water rights. (*Conant v. Jones,* 3 Ida. 606, 32 Pac. 250; *Mahoney v. Neiswanger,* 6 Ida. 750, 59 Pac. 561; *Hall v. Blackman,* 8 Ida. 272, 68 Pac. 19; *Sandpoint Water etc. Co. v. Panhandle Dev. Co.,* 11 Ida.

405, 83 Pac. 347; *Brown v. Newell,* 12 Ida. 166, 85 Pac. 388; *Lockwood v. Freeman,* 15 Ida. 395, 98 Pac. 295; *Nielson v. Parker,* 19 Ida. 727, 115 Pac. 488; *Bennett v. Nourse,* 22 Ida. 249, 125 Pac. 1038; *Furey v. Taylor,* 22 Ida. 605, 127. Pac. 676; *Crane Falls Power etc. Co. v. Snake River Irr. Co.,* 24 Ida. 63, 133 Pac. 655; *Washington State Sugar Co. v. Goodrich,* 27 Ida. 26, 147 Pac. 1073; *Reno v. Richards,* 32 Ida. 1, 178 Pac. 81; *Rabido v. Furey,* 33 Ida. 56, 190 Pac. 73; *Morgan v. Shaw,* 47 Or. 333, 83 Pac. 534; *Ripley v. Park Center Land etc. Co.,* 40 Colo. 129, 90 Pac. 75; *Kendall v. Joyce,* 48 Wash. 489, 93 Pac. 1091; *Fruitland Irr. Co. v. Kruemling,* 62 Colo. 160, 162 Pac. 161; *In re Hood River,* 114 Or. 112, 227 Pac. 1065; *In re Water Rights in Silvies River,* 115 Or. 27, 237 Pac. 322.)

▮ May 25, 1908, the Farmers' Co-operative Ditch Company filed with the state engineer application to appropriate 140 second-feet of the Boise River, which upon due proof ripened into License No. 3856. This respondent claims 154.455 second-feet, its appropriation by diversion and diligent beneficial application, and the filing of May 25, 1908, did not deprive it of such priority given by the court, thus previously acquired. (*Lockwood v. Freeman, supra; Joyce v. Rubin,* 23 Ida. 296, 130 Pac. 793; *In re Water Rights in Silvies River, supra,* at page 327.)

▮ July 2, 1894, respondent Farmers' Union Ditch Company, posted a notice of water appropriation for 15,000 miner's inches of the waters of Boise River. The Stewart Decree gave this company as of that date, 5,500 inches. On a showing of due diligence in the construction of its irrigation system, and that this ditch when constructed was capable of carrying 12,700 inches, the decree herein gave this company as additional water contemplated in the original notice but applied to a beneficial use since the Stewart Decree, 54.46 second-feet, or 2,723 inches as of July 2, 1894, under the doctrine of relation authorized by the statutory method of appropriation, which was justified. (*Sandpoint Water etc. Co. v. Panhandle Dev. Co., supra; Sarret v. Hunter,* 32 Ida. 536, 185 Pac. 1072.)

▮ March 23, 1900, W. C. Annett posted a notice

claiming 500 second-feet of water from Boise River, and April 4, 1900, transferred this right to the New York Canal Company. On this claim thus initiated, and establishment thereof sought under the statutory method of appropriation, the Stewart Decree gave the New York Canal Company 10,955 inches or 219.1 second-feet, from March 23, 1900.

March 3, 1906, the New York Canal Company transferred its canal and all rights under this water right, save 13,893 inches, or 277.86 second-feet, claimed and retained by the New York Canal Company and its stockholders, to the United States, for its proposed and subsequently constructed reclamation project. Of these retained 277.86 second-feet, 239.2426 were later transferred to the New York Irrigation District, and 38.6174 second-feet to Boise-Kuna Irrigation District, appellants herein, and these appellants contend that by application to a beneficial use under the Annett notice, and by the statutory doctrine of relation, they should have received herein 58.76 second-feet, as in addition to the Stewart Decree, making up the full 277.86 second-feet above referred to. By the same token the United States claims the 222.14 second-feet.

The decisive point with regard to these claims involves the capacity of the New York Canal in 1901; no enlargement thereof being made until 1907, and no rights are urged with respect to these 277.86 second-feet by reason of such work performed in 1907, and subsequent years.

The court found on this point as follows:

" . . . . that work was commenced by the said New York canal company on the excavation and construction of the works for the diversion of said water under said appropriation within sixty days after the posting of said notice, and said work was prosecuted diligently and uninterruptedly to completion; that said works for the diversion of said water were completed in 1901 and were of sufficient capacity when completed to accommodate and carry 219 second-feet of said waters and no more, the right to the use of which 219 second-feet was decreed to the said New York Canal Company with a priority of

March 23, 1900, by the decree entered in the District Court
of the Seventh Judicial District of the State of Idaho, in
and for the county of Canyon on January 18, 1906, in the
action entitled *Farmers' Co-operative Ditch Company,
plaintiff, v. Riverside Irrigation District, Limited, et al.,
Defendants.* That neither the said W. C. Annett nor the
New York Canal nor any of his or its successors nor the
New York Irrigation District nor Boise-Kuna Irrigation
district nor the United States of America, nor any of their
predecessors made any further enlargement of said New
York Canal under, pursuant to or in support of the said
Annett water right of March 23, 1900, but that the en-
largement of said Canal and further diversion of waters
by and through it were made by the United States of Amer-
ica under other claims of right and the facts with respect
to such other rights are hereinafter found.

"That neither in the Findings of Fact nor in the decree
made and entered in the Court in the case of *Farmers' Co-
operative Ditch Company v. Riverside Irrigation District*
on January 18, 1906, did the said Court ascertain, find or
decree that the said New York Canal was capable of divert-
ing more water than was applied to a beneficial purpose
at the time the right of the person or persons owning or
using such canal were so adjudicated by said court; nor
did the Court therein ascertain, find or decree the amount
of or that there was any water which could be diverted
through such works in excess of the amount beneficially ap-
plied nor did said Court set a time when any such amount
of water should be applied to a beneficial purpose."
—and concluded thus:

"That neither the defendant New York Irrigation
District nor the defendant Boise-Kuna Irrigation Dis-
trict is entitled to any waters whatsoever (in addition to
that awarded thereunder in the Stewart Decree) under or
by virtue of the water filing of W. C. Annett made on
March 23, 1900."

If the canal was in 1901 of sufficient capacity to carry
the full 500 second-feet, or any portion thereof in excess
of the 219.1 determined in the Stewart Decree, covered in

the Annett filing, and appellants applied the same to a beneficial use, they are entitled thereto under the doctrine of relation the same as applied to respondents.

The evidence as to the capacity of the New York Canal in 1901 or 1902, or before its enlargement in 1907, was as follows:

In the testimony in the *Farmers' Co-operative Ditch Company v. Riverside Irrigation District, supra;* Wiley, 300 second-feet, date 1902, 1903; Eagleson, 300 second-feet, date 1901; Vaughn, 288 second-feet, date 1904.

The only witness who gave a capacity as less than claimed by appellants, was Ross; 173 second-feet, date 1904. Judge Stewart evidently, however, did not follow Ross, because he awarded 219.1 second-feet, and he could have made such award only on the conclusion that the ditch had at least that capacity.

The witnesses in the present case on this point are:

Bennett, 300 second-feet, date 1904, 1905; Tuller, 337 second-feet, date previous to 1907 (time of enlargements by the United States); Newell, 337 second-feet, date previous to 1907; Thompson, dimensions of the canal which show a computed capacity of 337 second-feet previous to 1907.

It was also stipulated herein as to F. E. Weymouth, as follows:

"In conformity with the stipulation immediately preceding, it is hereby stipulated and agreed by and between the respective parties to this action, in open court, through their respective counsel of record, that F. E. Weymouth testified on the former hearing of this case that he was supervising engineer for all government reclamation projects within the State of Idaho; that he had made a study and examination of the acreage of lands improved, cultivated, and irrigated with the waters from the Boise river and was familiar with said matters, the New York Canal being included in said examination, and that during each and every year since March 23, 1900, there had been improved, cultivated and irrigated with the waters from said Boise river, flowing through said New York Canal, under its

appropriation of March 23, 1900, the following number of acres of land lying under said canal, to-wit:

| Year | Increased acreage put in cultivation and irrigated each year | Total number of acres in cultivation and irrigated. |
|------|------|------|
| 1901 | 460 | 460 |
| 1902 | 1540 | 2000 |
| 1903 | 2951 | 4951 |
| 1904 | 6004 | 10955 |
| 1905 | 1334 | 12289 |
| 1906 | 1705 | 13994 |
| 1907 | 1145 | 15139 |
| 1908 | 1006 | 16145 |

"Judge McCarthy: It is further stipulated and agreed that the said F. E. Weymouth, if sworn as a witness in this hearing, would repeat the testimony above set forth and that said testimony so offered and stipulated to may be deemed admitted in evidence in this case.

"Mr. Wyman: The only matter I noticed in there was the statement that this water was carried through the canals through and upon the lands under the appropriation of 1900, is that the year?

"Mr. Lampert: Yes.

"Mr. Wyman: Would that be understood as an admission of the right to claim the increased acreage under that appropriation?

"Mr. Wood: I do not understand that it admits anything.

"Mr. McCarthy: We would not claim that effect for it.

"Mr. Wyman: This statement of course is without prejudice to any claim on the part of either side as to the doctrine of relation. It does not admit that it applies to this right."

Conceding that because of the remarks following the stipulation, it would not be binding as to which right, Annett, or Moore, covered the acreage mentioned, or water carried, is not of moment here, since we are now considering only the capacity of the canal in 1901, 1902. If 13,994 inches were delivered in 1906, the canal had that capacity in 1901, 1902, since there was no enlargement until 1907.

While the above figures showed that 13,994 acres were in cultivation and irrigated, it does not show that an inch of water to the acre was delivered; or 277.86 second-feet.

We have not found, nor has our attention been called, to any evidence showing measured diversions in 1906, or with certainty what the duty of water was in 1906; nor was there a precise finding on this point, and since the stipulation as to the duty of water has been sent back for revision (see hereafter), and it is not clear whether such stipulation covered the previous years, or is to be a guide for the future, a finding should be made either as to the duty of water to the lands irrigated by the New York canal in 1906, or a finding as to what water was actually delivered through that canal in 1906, since the finding in the Stewart Decree did not purport to fix the canal capacity.

The judge in the instant case had only the record of Mr. Ross' testimony before him, and Judge Stewart did not follow it; we are therefore not bound by the trial judge's consideration thereof to the same extent as if the witness had appeared in person. (*In re Estate of Peterson*, 38 Ida. 195, at 201, 220 Pac. 1086.)

It will be noted that the above construction does not conflict with the rule announced in *Black v. Black*, 33 Ida. 226, 191 Pac. 353, and *Walling v. Walling*, 36 Ida. 710, 214 Pac. 218, because here there is no conflicting oral testimony on the point involved; there was no oral testimony in the trial herein that the capacity of the canal in 1901–2 was less than 277.86 second-feet.

The tabulation thus furnished by Mr. Weymouth is supported by the oral testimony of all the witnesses noted above, on this point, and if an inch to the acre was delivered through the New York Canal to the acreage indicated, in 1906, the award should be modified accordingly. The decree on this point is reversed and remanded and the trial court directed to satisfactorily determine this specific question and conclude accordingly.

If the New York Canal had only a capacity of 277.86 second-feet in 1901–2, the United States is not

entitled to any more water under the Annett filing for two reasons: First, because of this stipulation:

"Mr. Lampert: Máy I ask that the record here show at this time that this water right filing, and all the rights growing therefrom, have by proper conveyance conveyed to and are now owned by, and the decree when entered should go to the New York Irrigation District to the extent of 11,962.13 inches; the Boise-Kuna Irrigation District to the extent of 1930.87, and the Project lands, or the Intervenor, the balance of the interests, to the extent of 11,150 inches. Is that correct?

"Mr. Stoutemyer: The balance that is not reserved to the New York Canal Company belongs to the government.

"Mr. Wood: We do not want to stipulate those figures but we will stipulate to those fractional interests, whatever they may be.

"Mr. Lampert: That is exactly the point I was getting at.

"Mr. Wood: We do not want to stipulate. that you are entitled to that quantity but we are willing to stipulate that you are entitled to, as successors, to whatever interest you may have.

"Mr. Lampert: Read my stipulation up to the point of interruption.

"Stipulation read.

"Mr. Lampert: (Continuing.) The New York Irrigation District and the Boise-Kuna Irrigation District being the successors in interest to all of the interests held by the New York Canal Company and reserved by it out of that filing to the extent of 277.86 second feet, the balance of it being sold in 1906 to the United States Reclamation Department, and if there be any modification of this total as to water right at present existing and owned by these parties, the first reduction shall be as to the government 223 second-feet, and the balance in like proportion between the Boise-Kuna Irrigation District and the New York Irrigation District. Is that correct?

"Mr. Grebe: Yes, subject to correction. The figures were taken over the telephone."

Second, the trial court was justified from the record herein, in finding that the water carried for the government after 1906 was not under the Annett filing, but under the Moore filing.

December 4, 1903, C. W. Moore and others applied to the state engineer for a water right in the Boise River for 5,200 second-feet, which application was granted, and February 24, 1904, this claim was transferred to the Secretary of the Interior for the United States reclamation project involved herein. Beginning with 1907, the New York Canal was enlarged by the government and under the Moore claim, after due proof the state engineer awarded the United States water permit or License No. 430, for 1647 feet.

Appellants contend that the state engineer's license is *prima facie* evidence of the right granted (C. S., sec. 5580; *Basinger v. Taylor,* 30 Ida. 289, 164 Pac. 522; *Big Wood Canal Co. v. Chapman,* 45 Ida. 380, 263 Pac. 45); and therefore it should not have been reduced by the trial court.

The court reduced the appropriation under License No. 430, of 1647 second-feet as allowed by the state engineer, to 1,062.08 second-feet, as of date December 14, 1903, without a finding showing why, and there is an inconsistency between the finding as made:

"That said 1647 cubic feet of water per second, including the 219 second feet theretofore awarded to the New York Canal Company by said decree, was actually diverted and actually applied to beneficial use in the irrigation of the lands prior to January 19, 1913 the date set in the said permit for the application of said water to beneficial use, and on the 18th day of January, 1913, the Secretary of the Interior of the United States, acting through F. E. Weymouth, Supervising Engineer of the Reclamation Service, and under the provisions of said Reclamation Act, made proof of the application to beneficial use of said 1647 second feet of water and submitted the same to the State Engineer of Idaho;

"That said proof was accepted by the State Engineer of Idaho and thereupon the State Engineer issued to the U. S. Reclamation Service, for use upon the 53,104 acres of lands in said license described his final Water License No. 430, for the said 1647 second feet of water or so much thereof as may be required and the same was duly recorded in the office of the State Engineer with a priority date of December 4, 1903."

—and the conclusion:

"That the intervenor United States of America is not entitled to any waters whatsoever (in addition to that awarded thereunder in the Stewart Decree) under or by virtue of the water filing of W. C. Annett made on March 23, 1900; but subject to the awards made in the said Stewart Decree it is entitled to the use of the waters of said Boise River diverted through what is commonly known as the New York Canal for domestic purposes and (except as herein specifically limited) for use of lands lying under the same in the following amounts from the following dates: —1,062.08 second-feet from Dec. 14, 1903 . . . . "

The court, as disclosed above, found that proof of beneficial use was submitted to the state engineer for 1647 second-feet under the Moore claim but without further finding, awards only 1062.08. The findings do not justify such conclusion, nor are we enlightened from other findings or conclusions as to this discrepancy.

On this point the decree must be reversed and remanded for the court to make full and complete findings in this particular, and conclude accordingly.

■ It was inconsistent to hold that all the work done subsequent to the Stewart Decree by the United States for itself and the other appellants was under the Moore claim, and yet hold that the award made by the state engineer under the Moore claim, or License No. 430, included the 219.1 second-feet awarded in the Stewart Decree, or such additional amount as may finally be awarded herein, under the Annett claim. This portion of the findings and decree must be reformed accordingly.

Appellants and respondents argue much as to the relative diligence of the various users in constructing and completing their respective irrigation systems. The court found in effect that all had been diligent within the legal requirements and in this was correct.

The other awards given by the trial court are complained of only because they were made subject to the rights awarded in the Stewart Decree. Such declaration, however, was correct for two reasons: First, being later in time, with the exception of the award under the Moore claim or License No. 430, which would take its proper place according to the date of its priority, they were subordinate in law without such statement; and second, such declaration is consonant with the request of the United States in its complaint in intervention.

"Wherefore, this intervenor prays that it be adjudged and decreed to be the owner of the rights to divert from the Boise River through its said canals, and to store in its said reservoirs, the amounts of water specified in the above described appropriations and permits; that such rights to divert said water be decreed a prior right to any right claimed by said plaintiff and other defendants, or any of them, excepting that adjudicated in said case of *Farmers' Cooperative Ditch Company v. Riverside Irrigation District, et al.*, as prior to the year 1900."

The government resists having the restrictive five-year requirement of the 1903 statute (House Bill No. 146, sec. 2, Sess. Laws 1903, p. 226), for completion of irrigation appropriations applied to its Moore claim, contending that the statute thereby becomes a statute of limitations which may not apply to the government, and also that the United States has retained rights to the waters of the state which may be exercised as the government sees fit.

Section 8, chap. 1093, Act June 17, 1902, 32 Stat. 390, Title 43, sec. 383, U. S. Code Annotated, is controlling, and has been construed contrary to such contention.

"The act of June 17, 1902, not only recognizes the constitution and laws of the state providing for the appropria-

tion of its waters and the reclamation of its arid lands, but it requires that the Secretary of the Interior, in carrying out the provisions of the act, shall proceed in conformity with such laws." (*Burley v. United States,* 179 Fed. 1, 33 L. R. A., N. S., 807.)

Appellants' argument that public waters are to be governed by the same principle applicable to public lands is not tenable.

"Much is said in the briefs about several congressional enactments providing or recognizing that rights to the use of water in streams running through the public lands and forest reservations may be acquired in accordance with local laws, but these enactments do not require particular mention, for this is not a controversy over water rights but over rights of way through lands of the United States, which is a different matter, and is so treated in the right-of-way acts before mentioned. See *Snyder v. Colorado Gold Dredging Co.,* 181 Fed. 62, 69, 104 C. C. A. 136." (*Utah Power & Light Co. v. United States,* 243 U. S. 389, 37 Sup. Ct. 387, 61 L. ed. 791, at 819.)

The United States further contends that though it was not made a party to the suit herein, but after leave sought and obtained, intervened, and participated throughout the trial as any other party, the state courts have no jurisdiction to enter a decree fixing its priorities. The government of course may not be sued without its consent, which consent may be given only by Congress. (*Morrison v. Work, Secretary of Interior,* 266 U. S. 481, 45 Sup. Ct. 149, 69 L. ed. 394.) Here, the United States of its own volition, filed a complaint in intervention by its local United States district attorney and his assistant, and the special local attorney for the reclamation service.

Judge Cushman denied a motion to remand in a suit similar to this (*North Side Canal Co. v. Twin Falls Canal Co.,* 12 Fed. (2d) 311), but herein no motion to remove was made. The precise question here involved was not therein considered.

■ If the government to protect its rights desires to enter a state court, may the state court, which otherwise has jurisdiction of the cause, refuse admission? If so, on what grounds? The government certainly may sue on behalf of a reclamation project. (*West Side Irr. Co. v. United States*, 246 Fed. 212.)

■ Under the section of the federal statute above referred to, it would seem that the government suing for a federal reclamation project in a state court, would be bound by the decree of such court the same as any other party. (*United States v. Dominion Oil Co.*, 241 Fed. 425; *United States v. West Side Irr. Co.*, 230 Fed. 284, 290; *United States v. Midway Oil Co.*, 232 Fed. 619, at 631.)

The right of the attorney general to intervene on behalf of the United States has been recognized. (*People of State of New York v. State of New Jersey*, 256 U. S. 296, 41 Sup. Ct. 492, 65 L. ed. 937.)

■ The United States may sue in a court of its own choice (*State v. Wisconsin Telephone Co.*, 169 Wis. 198, 172 N. W. 225), which choice herein was the state court.

■ Conceding that the action may be removed or taken to a federal court, but until such time, does not jurisdiction obtain in the forum selected, or at least adopted by the government, to pass on the controversy? Under the circumstances herein, the state court had jurisdiction.

■ The parties entered into the following stipulation as to the duty of water:

"It is hereby stipulated and *agree*, by and between the parties hereto, acting through their respective attorneys, that the duty of water applicable to the rights involved in the above entitled action, except as hereinafter stated, shall be determined and decreed to be as follows:

"First: That so long as the natural flow of the Boise River is sufficient to supply the said rights involved in this case and the prior rights at the rate of a miner's inch per acre, measured at the respective points of diversion of the parties hereto, the duty of water shall be determined and

decreed to be on the basis of a miner's inch per acre measured at the points of diversion of the parties;

"That as the season advances and the flow of the river drops, it is stipulated and decreed that on account of the longer nights and cooler weather, rising water table and other conditions, a higher duty of water is practical, and it is stipulated and agreed that when the natural flow of the river becomes insufficient to supply the rights involved in this case, and the prior rights, at the rate of a miner's inch per acre at the points of diversion the amount delivered to each appropriator shall be cut to the basis of .75 of a miner's inch per acre at the points of diversion, beginning with the latest right and then cutting in succession each right to the earliest right involved herein.

"That thereafter, when the natural flow of the river becomes insufficient to supply the rights involved in this case, and the prior rights, at the rate of .75 of a miner's inch, measured at the points of diversion, another cut shall be made to cut the amount delivered to each appropriator, beginning with the latest right, to six-tenths (.6) of a miner's inch per acre, measured at the points of diversion, and that the distribution of water to supply the rights involved in this case shall be continued on a basis of six-tenths of a miner's inch per acre, measured at the points of diversion, as long as the natural flow lasts in sufficient volume to supply water to any of the rights included in this case.

"It is agreed and understood that the Arrowrock Reservoir right, under License No. 7180, shall not be subject to cut until the flow of the Boise River is insufficient to supply the said right, and all rights prior thereto, and that after the flow of the Boise River becomes insufficient to supply the said right under License No. 7180, and all rights prior thereto, then the said right under said License No. 7180 shall be cut out in its entirety before any right prior thereto shall be cut."

Evidence was also introduced on this subject and the court construed the stipulation thus:

"That in making the respective cuts to seventy-five per cent and to sixty per cent, it is meant that the reasonable amount of water so required for the irrigation of lands involved herein is such that when the cut to seventy-five per cent is made, the amount of water so required and to be delivered, respectively, shall be seventy-five per cent of the amount to which each claimant is found to be entitled herein, and further *than* when the cut to sixty per cent is made, the amount of water so required and to be delivered shall be sixty per cent of the respective amounts to which claimant is found to be entitled herein and that this shall be so regardless of the number of acres upon which the said waters may be spread or used by such claimant."

Appellants contend this construction is erroneous in that they receive only seventy-five per cent and sixty per cent of .8 of an inch of water to the acre, while the respondents receive seventy-five per cent and sixty per cent of one inch to the acre.

The stipulation is perhaps capable of either construction, though its literal terms incline to the construction contended for by appellants.

The duty of water is most important, and while in instances where the parties cannot agree on what a stipulation means, the court may construe it, we believe it better to reverse and remand the case on this point, especially in view of the reference occurring in the record to the effect that various temporary or annual orders have been made during the time that *Farmers' Co-operative Ditch Company v. Riverside Irrigation District, supra,* has been quiescent in the lower court, and as such orders may continue, no hardship will ensue. If the duty of water is to be determined by a stipulation, the stipulation should be clear, definite and clearly and mutually understood by all parties. The evidence aside from the stipulation is scarcely sufficient upon which to predicate a finding or conclusion in this regard.

The decree is affirmed as to the respective rights and priorities of the several respondents, and the United States

of America, under the Annett filing, except that the appropriation decreed the United States under the Moore filing shall not include the 219.1 second-feet granted the New York Canal Company in the Stewart Decree.

The decree is reversed and the cause remanded for the purpose of having the lower court receive such further competent evidence as may be offered by any party and make adequate findings and conclusions, with respect to the rights to be decreed the New York Irrigation District and Boise-Kuna Irrigation District under the Annett filing; the United States under the Moore filing, or License No. 430; and as to the duty of water.

No costs allowed.

Petition for rehearing denied.

Lee, C. J., and Varian and McNaughton, JJ., concur.