# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37723-2010

| | | |
|---|---|---|
| IN RE: SRBA CASE NO. 39576 | ) | |
| | ) | **Boise, November 2011 Term** |
| | ) | |
| CITY OF POCATELLO, | ) | **2012 Opinion No. 54** |
| | ) | |
| Petitioner-Appellant, | ) | **Filed: March 22, 2012** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| THE STATE OF IDAHO, | ) | **THIS IS A SUBSTITUTE** |
| | ) | **OPINION. THE COURT'S** |
| Respondent. | ) | **PRIOR OPINION DATED** |
| | ) | **JANUARY 5, 2012** |
| | ) | **IS HEREBY WITHDRAWN**. |
| | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, in and for Twin Falls County. The Hon. Eric J. Wildman, District Judge.

The judgment of the district court is <u>affirmed</u>.

Josephine Beeman, Beeman & Associates, P.C., Boise, argued for appellant.

Shasta Kilminster-Hadley, Deputy Attorney General, Boise, argued for respondent.

---

EISMANN, Justice.

This is an appeal from the decision of the district court in the Snake River Basin Adjudication holding: (a) that Pocatello cannot use its wells as alternate points of diversion for its surface water rights; (b) that it can use its interconnected wells as alternate points of diversion for all of the associated water rights on the condition that doing so will not change the priority date and quantity of water that can be pumped from each well; (c) that one groundwater right was properly classified as for an irrigation purpose; and (d) that Pocatello failed to establish earlier priority dates for two of its groundwater rights. We affirm the judgment of the district court.

# I.

## Factual Background

In 1985, the legislature enacted legislation to commence an adjudication of the water rights of the Snake River basin. On June 17, 1987, the Director of the Idaho Department of Water Resources (IDWR), filed a petition in the name of the State to begin the Snake River Basin Adjudication (SRBA), and on November 19, 1987, the adjudication was commenced. In April 1990, the City of Pocatello filed its water right claims, and it later filed amended claims. Pursuant to its statutory duties, IDWR filed *Director's Reports* with respect to Pocatello's claims. The disputed matters were tried to a Special Master, and Pocatello then challenged several of the Special Master's findings of fact and conclusions of law in the district court. The court entered a judgment affirming the Special Master's recommendations, and Pocatello filed a motion to correct or amend the judgment. After that motion was denied, it timely appealed.

Water for Pocatello's in-town service area is pumped into an interconnected distribution system from twenty-two wells supplied by twenty-one groundwater rights.[1] The wells were developed at different times and are located throughout the in-town service area. Because the interconnected water distribution system was in operation prior to November 19, 1987, Pocatello contended, pursuant to Idaho Code section 42-1425, that each of these wells had become an alternate point of diversion for each of the twenty-one water rights, which would permit it to withdraw water under its most senior groundwater rights from any well. IDWR recommended that each well in the system could serve as an alternate point of diversion for each of the twenty-one water rights if the water rights were subject to a condition stating, "To the extent necessary for administration between points of diversion for ground water, and between points of diversion for ground water and hydraulically connected surface sources, ground water was first diverted under this right from Pocatello well [description] in the amount of __ cfs." IDWR did not recommend that condition for three of Pocatello's groundwater rights that supplied water to the in-town system (29-2274, 29-2338, and 29-7375) because those rights were subject to administrative transfer No. 5452, which did not include the condition and occurred after 1987. Pocatello also had a separate water delivery system to provide water to its airport. That system

---

[1] These water rights are: 29-2274, 29-2338, 29-2401, 29-2499, 29-4221, 29-4223, 29-4224, 29-4225, 29-4226, 29-7106, 29-7322, 29-7375, 29-11339, 29-11348, 29-13558, 29-13559, 29-13560, 29-13561, 29-13562, 29-13637 and 29-13639.

was supplied by three water rights pumped from three wells. IDWR recommended that the condition be attached to two of those water rights (29-7450 and 29-13638). The Special Master recommended that the condition be attached to the water rights as suggested by IDWR, and the district court agreed.

Pocatello also has four surface water rights, one in Gibson Jack Creek and three in Mink Creek.[2] It contended that because those creeks had previously been a source of potable water and they feed the aquifer from which it pumps water from its wells, those wells were alternate points of diversion for the surface water rights. The Special Master concluded that the creeks and the aquifer were separate sources, and Idaho Code section 42-1425(2) did not provide for changes in the source of a water right. The district court agreed.

In 1984, Pocatello submitted an application for a groundwater right, stating that the proposed use was to irrigate crops located outside the city. On July 1, 1987, the city asked that the proposed use be changed to domestic, commercial, municipal, and industrial, but IDWR refused to do so. Based upon the city's application, in January 2003 IDWR issued the city license number 29-7770 for an irrigation purpose. Pocatello contended that this water right should be changed to a municipal purpose pursuant to Idaho Code section 42-1425(2) because it was using the water in its biosolids program. The Special Master rejected that argument because the statute only applied to changes in use of water rights that occurred prior to November 19, 1987. Because the city did not obtain this water right until January 2003, the statute did not apply. The district court agreed with the Special Master.

The *Director's Report* recommended a priority date of July 16, 1924, for water right number 29-13558 and a priority date of October 22, 1952, for water right number 29-13639. Pocatello contended that the priority dates should be 1905, and December 31, 1940, respectively. The Special Master concluded that the city had failed to prove the claimed earlier dates. However, because the evidence showed that the well related to water right 29-13639 preexisted the date of the application for a license, the Special Master moved the priority date of that right forward by one day to October 21, 1952. The district court upheld the Special Master, although it affirmed moving the priority date of 29-13639 only because the state did not object.

---

[2] The Mink Creek rights are 29-271, 29-272, and 29-273, and the Gibson Jack Creek right is 29-4222.

## II.

## Did the District Court Err in Upholding the Condition Attached to

## Pocatello's Ground Water Rights?

Pocatello contended that each of the wells in its two interconnected water distribution systems had become an alternate point of diversion for all water rights associated with that system pursuant to Idaho Code section 42-1425(2). That statute provides, insofar as is relevant, as follows:

> Any change of place of use, point of diversion, nature or purpose of use or period of use of a water right by any person entitled to use of water or owning any land to which water has been made appurtenant either by decree of the court or under the provisions of the constitution and statutes of this state, prior to November 19, 1987, the date of commencement of the Snake River basin adjudication . . . may be claimed in the applicable general adjudication even though the person has not complied with sections 42-108 and 42-222, Idaho Code, provided no other water rights existing on the date of the change were injured and the change did not result in an enlargement of the original right.

IDWR recommended that each well could be an alternate point of diversion for all water rights associated with an interconnected system only if the water rights had an attached condition stating, "To the extent necessary for administration between points of diversion for ground water, and between points of diversion for ground water and hydraulically connected surface sources, ground water was first diverted under this right from Pocatello well [description] in the amount of __ cfs." IDWR asserted that the condition was necessary to avoid injury to other water rights and to assist in the administration of water rights in times of shortage. The district court agreed, writing:

> Specifically, injury to an existing water right is not limited to the circumstance where immediate physical interference occurs between water rights as of the date of the change. Injury also includes the diminished effect on the priority dates of existing water rights in anticipation of there being insufficient water to satisfy all rights on a source (or in this case a discrete region of the aquifer) and priority administration is sought. Even though the priority administration may occur at some point in the future, injury to the priority date occurs at the time the accomplished transfer is approved.

The court also noted, "The very fact that Pocatello contests the condition is an acknowledgment that without the condition the priorities of existing water rights will be diminished in favor of the alternative point of diversion for one of Pocatello's more senior rights. i.e injury."

4

Pocatello claims that the district court erred in requiring the condition in order to prevent injury to any existing water rights, where no actual injury to any other water right was shown. According to Pocatello, "[N]o injury analysis should even be triggered under § 42-1425 unless there has been a third party objection filed to a claim" and "Future injury is also not a proper concern under the terms of § 42-1425, as only injuries to the other water right holders on the date of the change could justify denial of a claim." Pocatello is wrong on both counts.

Pocatello's water distribution system consists of twenty-two wells that each pump water into an interconnected distribution system, allowing the entire distribution system to be the place of use for each well. When each well began diverting water, it had an associated water right with a specific priority date and a specific quantity of water that could be pumped from the well. Idaho Code section 42-1425 does not permit Pocatello to change the priority date of the water right associated with any well or the quantity of water that can be pumped from the well. It validates "[a]ny change of place of use, point of diversion, nature or purpose of use or period of use of a water right . . . [that was accomplished] prior to November 19, 1987, . . . provided no other water rights existing on the date of the change were injured and the change did not result in an enlargement of the original right." I.C. § 42-1425(2). "Proceeding under section 42-1425 a water user cannot obtain a transfer that constitutes either an enlargement of the water right or otherwise injures water rights existing on the date of the change." *Fremont-Madison Irrigation Dist. and Mitigation Group v. Idaho Ground Water Appropriators, Inc*., 129 Idaho 454, 458, 926 P.2d 1301, 1305 (1996).

"An increase in the volume of water diverted is an enlargement and is not allowed under I.C. § 42-1425." *Id*. Likewise, "there is *per se* injury to junior water rights holders anytime an enlargement receives priority." *A & B Irrigation Dist. v. Aberdeen-American Falls Ground Water Dist*., 141 Idaho 746, 753, 118 P.3d 78, 85 (2005). "Priority in time is an essential part of western water law and to diminish one's priority works an undeniable injury to that water right holder." *Jenkins v. Idaho Dept. of Water Res*., 103 Idaho 384, 388, 647 P.2d 1256, 1260 (1982). "The limitations in section 42-1425 protect other water users from injury to their rights resulting from *a recognition of the transfers* that are memorialized in the adjudication." *Fremont-Madison*, 129 Idaho at 458, 926 P.2d at 1305 (emphasis added). If Pocatello could have each well be an alternate point of diversion for each water right without the attached condition, as stated by IDWR in its supplemental *Director's Report*, "the City would be allowed to withdraw

water under its most senior priority water right from any well location." Recognizing the transfers without the attached condition would injure junior water rights holders by diminishing their priorities. The district court did not err in upholding the attached condition.

## III.

## Did the Department of Water Resources Have the Authority to Recommend the Condition that Was Attached to Pocatello's Ground Water Rights when It Had Not Done So in Prior Similar Cases?

Pocatello argues on appeal that the condition recommended by IDWR was a change from the position it had taken in prior similar cases involving cities with multiple wells and an interconnected delivery system and that it could not make that change without going through the rule-making process. Pocatello did not timely raise this issue in the district court.

In its post-trial brief submitted to the Special Master, Pocatello argued: "When IDWR recommended Pocatello's state law claims in 2003, it added condition language to every water right recommended with alternate points of diversion under the accomplished transfer statute. IDWR's inclusion of the condition provision is a change in position that it instituted in 2003." However, it did not include that issue in its challenge to the district court of the Special Master's recommendations.[3] It raised that issue for the first time to the district court in its motion pursuant to Rule 59(e) of the Idaho Rules of Civil Procedure to alter or amend the judgment.

---

[3] In its opening brief on its challenge to the district court, Pocatello listed the issues as follows:

**A. Consideration of Complex Factual Matters in Pocatello's Trial Below.**

1. Was it error as a matter of law for the Special Master to approve IDWR's condition on ground water rights for Pocatello's interconnected well system when consideration of the condition required proceedings counter to the processes endorsed by the Idaho Supreme Court decisions in *Fremont-Madison* and *American Falls*?

**B. Conditions on the Water Rights for the Interconnected Well System.**

1. Was it error as a matter of law for the Special Master to conclude that Pocatello could not have its interconnected wells decreed as alternate points of diversion for its municipal groundwater rights under the accomplished transfer statute unless the decree included a condition to protect junior water rights?

2. Did the Special Master commit error and impermissibly constrain Pocatello's exercise of its water rights by recommending several of Pocatello's groundwater rights claimed under the accomplished transfer statute with condition language that identifies nonexistent wells?

6

"The purpose of motions under that rule is 'to allow the trial court . . . to correct errors both of fact and law that had occurred in its proceedings.' Consideration of I.R.C.P. 59(e) motions must be directed to the status of the case as it existed when the court rendered the decision upon which the judgment is based." *First Sec. Bank of Idaho, N.A. v. Webster*, 119 Idaho 262, 266, 805 P.2d 468, 472 (1991) (citations omitted). "A Rule 59(e) motion may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *accord Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 (2008); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, pp. 127-28 (2d ed. 1995); 47 Am. Jur. 2d *Judgments* § 658 (2006). Such motion cannot be used to present new information that the trial

---

3. Was it an error as a matter of law for the Special Master to conclude that the Affidavit of Josephine P. Beeman in Support of Pocatello's Post-Trial Brief submitted additional evidence in violation of pre-trial orders?

4. Was it an error as a matter of law for the Special Master to conclude that placing a restrictive condition on five wells claimed as alternate points of diversion for Pocatello's interconnected groundwater rights under the accomplished transfer statute did not amount to a collateral attack on Pocatello's approved Formal Transfer No. 5452, which listed the same five wells as alternate points of diversion without the condition?

**C. Wells as Alternate Points of Diversion for Surface Water Rights.**

1. Was it error as a matter of law for the Special Master to conclude that in order to obtain an SRBA decree for an accomplished transfer claim of groundwater points of diversion for surface water rights, the City of Pocatello must first meet a burden of proof that its surface and groundwater points of diversion draw from the "same source" within these hydraulically connected sources?

2. Did the Special Master err as a matter of law by using incorrect standards of law to determine whether Pocatello's surface water rights on Mink Creek and Gibson Jack Creek were closely connected enough to Pocatello's interconnected groundwater wells to be considered the same source?

(Footnotes omitted.) The only reference to IDWR changing its position was in connection with Pocatello's argument that the Special Master erred in excluding three exhibits attached to the post-trial affidavit of Pocatello's counsel. In its brief, Pocatello argued: "Throughout the SRBA proceedings related to its state law claims, Pocatello has repeatedly raised the overarching issue that IDWR changed its position regarding accomplished transfers under I.C. § 42-1425. The exhibits were not 'new evidence' constituting a 'trial by ambush' as described in *Shelak v. White Motor Co.*" (Footnote omitted). Not surprisingly, the district court did not address the issue of IDWR's change in position in its initial decision. Pocatello raised it in its motion to alter or amend the judgment, and the district court then rejected the argument stating: "However, it appears that the 'change in position' that Pocatello refers to is a better understanding of conjunctive management and aquifer resources in the State of Idaho. . . . The Department should not be hindered by prior misconceptions or misunderstandings of such a quickly evolving area of the law."

7

court did not have before it rendered its judgment. *Marcher v. Butler*, 113 Idaho 867, 870, 749 P.2d 486, 489 (1988). A Rule 59(e) motion cannot be used to raise issues and offer evidence that, in hindsight, the litigant wishes it would have presented prior to the entry of a final judgment. Because this issue had not been raised to the district court prior to the entry of judgment, it could not be raised thereafter by a motion under Rule 59(e). Therefore, we will not address it on appeal.

## IV.

### Did the District Court Err in Holding that the Condition Applied to Water Rights Acquired Prior to May 26, 1969?

On appeal, Pocatello asserts, "The accomplished transfer statute, Idaho Code §42-1425 does not apply to changes made to water rights before May 26, 1969, the date it became mandatory to seek a formal transfer for changes to water rights." It did not raise that issue in the district court until it filed its motion to amend the judgment pursuant to Rule 59(e) of the Idaho Rules of Civil Procedure. In that motion, it argued for the first time to the district court that the condition proposed by IDWR could not apply to any water rights acquired prior to May 26, 1969, because prior to that date administrative approval was not required to change a point of diversion.

Whether Pocatello had changed the point of diversion for any of its wells prior to May 26, 1969, was an issue of fact. Merely connecting the wells to a common distribution system would not have changed the point of diversion for any of its water rights. The special master did not make any findings on that issue, undoubtedly because Pocatello did not raise it before the master.

Following the trial before the master, Pocatello submitted a post-trial brief, the first line of which stated, "This brief addresses all of the issues presented in the Court's six-day trial of Pocatello's 38 state-law SRBA claims." Pocatello listed the issues tried as follows:

- The 'OTHER PROVISIONS NECESSARY" remark recommended for 20 ground water rights associated with the City's interconnected culinary system.
- The recommended denial of the City's interconnected culinary wells as alternate points of diversion for the Mink Creek and Gibson Jack Creek surface water rights.
- The irrigation purpose of use recommended for Water Rights 29-7118, 29-7119, and 29-7770.

- The priority dates for Water Rights 29-13558 and 29-13639.

In the portion of its brief entitled "Statement of the Case," it asserted, "Ultimately, Pocatello's claims for its integrated culinary system show the City's knowledge of and compliance with the SRBA's 'accomplished transfer' statute, Idaho Code 42-1425." In the footnote to this statement, it said, "On April 25, 2003, Pocatello filed 32 amended SRBA claims; Pocatello amended 22 of these claims to include additional points of diversion."

In the section of its brief describing the course of the proceedings before the master, Pocatello stated:

> The City amended its SRBA claims to list each of these wells as points of diversion for the 21 ground water rights and four surface water rights that, as of November 19, 1987, were providing water for the City's integrated culinary system in town. *These claims for "alternate points of diversion" were filed in accordance with the accomplished transfer statute, Idaho Code 42-1425*.

(Emphasis added; footnotes omitted).

In its argument in the brief, Pocatello asserted, "Pocatello's evidence shows that its accomplished transfer claims meet the stated legislative intent of 42-1425 and the procedural requirements of the plain language of 42-1425." There was no mention in its brief of its assertion that section 42-1425 does not apply to transfers of points of diversion that occurred prior to May 26, 1969. Because Pocatello did not raise the issue before the special master, there is not a factual basis for this argument. As the district court wrote, "This Court has reviewed the record in detail and was unable to locate where in the record Pocatello establishes a date certain that the interconnected wells were in place."

It also did not raise the issue to the district court in its challenge of the special master's recommendations. It first raised the issue in its motion to alter or amend the court's judgment. In response, the district court wrote:

> The State argues that Pocatello has attempted to introduce new evidence and legal theories in its *Motion* and *Brief*. Specifically, the State asserts that Pocatello never briefed or argued the issue of whether pre-1969 water rights are exempt from the Director's review under I.C. § 42-1425, prior to filing its Motion. This Court agrees.

As we stated above, a Rule 59(e) motion cannot be used to raise arguments or present evidence for the first time that could reasonably have been raised prior to the entry of judgment. Because

9

this issue had not been raised to the district court prior to the entry of the final judgment, it could not be raised thereafter by a motion under Rule 59(e). Therefore, we will not address it on appeal.

## V.

### Did the District Court Err in Holding that Pocatello's Wells Were Not Alternate Points of Diversion for Its Surface Water Rights?

Pocatello had used its surface water rights in Gibson Jack Creek and Mink Creek to supply its municipal water system until it was required to cease doing so in 1993 due to changing water quality regulations. It contends that its wells became alternate points of diversion for its surface water rights pursuant to the provisions of Idaho Code section 42-1425. The aquifer from which Pocatello pumps water and the two creeks are separate sources, even though they are hydrologically connected. The district court held that the statute does not authorize a change in the source element of a water right. The statute validates changes in "place of use, point of diversion, nature or purpose of use or period of use of a water right" under the specific circumstances. I.C. § 42-1425(2). Pocatello argues that "since a change in source necessarily includes a change in point of diversion, this statutory language should not be interpreted as prohibiting a change in source."

The interpretation of a statute is a question of law over which we exercise free review. *Gooding County v. Wybenga*, 137 Idaho 201, 204, 46 P.3d 18, 21 (2002). It must begin with the literal words of the statute, *Thomson v. City of Lewiston*, 137 Idaho 473, 478, 50 P.3d 488, 493 (2002); those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. *State v. Hart*, 135 Idaho 827, 829, 25 P.3d 850, 852 (2001). If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written. *Hansen v. State Farm Mut. Auto. Ins. Co.*, 112 Idaho 663, 667, 735 P.2d 974, 978 (1987). We construe statutes under the assumption that the legislature was aware of all other statutes and precedents at the time the statute was passed. *Druffel v. State Dept. of Transp.*, 136 Idaho 853, 856, 41 P.3d 739, 742 (2002).

In 1986, the legislature enacted Idaho Code section 42-1411(2), which states the elements that the director of IDWR must determine with respect to a claimed water right. Ch. 220, § 13, 1986 Idaho Sess. Laws 573, 573-75. As originally enacted, it stated:

The director shall determine the following elements with respect to all water rights acquired under state law:
> (a) the name and address of the claimant;
> (b) the source of water;
> (c) the quantity of water used in cubic feet per second or the quantity of water stored in acre-feet per year;
> (d) the date of priority;
> (e) the legal description of the point(s) of diversion; if the claim is for an instream flow, then a legal description of the beginning and ending points of the claimed instream flow;
> (f) the purpose of use;
> (g) the period of the year when water is used for such purposes;
> (h) a legal description of the place of use; if one (1) of the purposes of use is irrigation, then the number of irrigated acres within each forty (40) acre subdivision, except as provided in section 42–219, Idaho Code;
> (i) the annual volume of consumptive use; and
> (j) such other matters as are necessary to define the right.

The elements listed describe the basic elements of a water right, *State v. Nelson*, 131 Idaho 12, 15, 951 P.2d 943, 946 (1998), and they include the source of water and the point of diversion as separate elements. In 1994, the legislature enacted Idaho Code section 42-1425. Ch. 454, § 31, 1994 Idaho Sess. Laws 1474, 1474-75. The statute provides the "place of use, purpose of use, point of diversion, nature of use or period of use of a water right" could be changed by a transfer that occurred prior to November 19, 1987. I.C. § 42-1425(2). The legislature did not include the source of water in the list of elements of a water right that could be changed under the statute. Had it intended source to be included, it would have done so. The district court did not err in holding that the source of a water right cannot be changed under Idaho Code section 42-1425.

## VI.

**Did the District Court Err in Holding that Water Right 29-7770**

**Was for an Irrigation Purpose?**

At the request of Pocatello, water right 29-7770 was licensed in 2003 for an irrigation purpose. The Special Master held that because the city had not sought an administrative change in the purpose of the water right and the license granting the water right was issued after the November 19, 1987, deadline in Idaho Code section 42-1425, the purpose of use remained irrigation. In its challenge to the district court, Pocatello argued that the water right should have

been issued for a municipal purpose rather than the requested irrigation purpose. The district court held that Pocatello would have to proceed with an administrative transfer proceeding.

On appeal, Pocatello argues that IDWR committed an error in law by issuing the license for the use requested by the city. Idaho Code section 42-108 states, "Any person desiring to make such change of point of diversion, place of use, period of use, or nature of use of water shall make application for change with the department of water resources under the provisions of section 42-222, Idaho Code." Section 17(b)(3) of Administrative Order No. 1 adopted by the SRBA court states, "Claimants seeking a change in their claimed water right under I.C. § 42-222 shall contact IDWR." That is what Pocatello must do to change the purpose of water right 29-7770. The district court did not err in so holding.

## VII.

## Did the District Court Err in Affirming the Special Master's Findings as to the Priority Dates for Water Rights 29-13558 and 29-13639?

The *Director's Report* recommended water right number 29-13558 with a priority date of July 16, 1924, and water right number 29-13639 with a priority date of October 22, 1952. The report "shall constitute prima facie evidence of the nature and extent of the water rights acquired under state law." I.C. § 42-1411(4). "Any party filing an objection to any portion of the director's report shall have the burden of going forward with the evidence to rebut the director's report as to all issues raised by the objection." I.C. § 42-1411(5). "Each claimant of a water right acquired under state law has the ultimate burden of persuasion for each element of a water right." *Id.*

Pocatello claimed that the priority date for 29-13558 was 1905 and that the priority date for 29-13639 was December 31, 1940. The matter was tried to a special master, who found that Pocatello had not met its burden of proof as to both of its claimed priority dates. "The trier of fact has the primary responsibility for weighing the evidence and determines whether the required burden of proof on an issue has been met." *Clear Springs Foods, Inc. v. Clear Lakes Trout Co.*, 136 Idaho 761, 765, 40 P.3d 119, 123 (2002). The district court was required to accept the master's findings of fact unless they were clearly erroneous. Idaho R. Civ. P. 53(e)(2). The district court determined that they were not clearly erroneous and accepted them. "The special master's findings of facts, which are adopted by the SRBA district court, are

12

considered to be the findings of the SRBA district court." *Clear Springs Foods*, 136 Idaho at 764, 40 P.3d at 122. A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous. *Bramwell v. South Rigby Canal Co.*, 136 Idaho 648, 650, 39 P.3d 588, 590 (2001); Idaho R. Civ. P. 52(a). On appeal, we do not judge the credibility of the witnesses or the weight of the evidence. *Bream v. Benscoter*, 139 Idaho 364, 367, 79 P.3d 723, 726 (2003). We only examine the record to determine if the factual findings are supported by evidence that a reasonable trier of fact would accept and rely upon in determining whether a disputed issue of fact has been proved. *Id.* at 367-68, 79 P.3d at 726-27.

**Water Right 29-13558.** In its supplemental *Director's Report*, IDWR explained its recommendation for the priority date of this water right as follows:

> This water right is based on beneficial use and is for the first well used by the City of Alameda and developed by the predecessor to the City of Alameda. . . . Pocatello claimed a priority date of 1905 and states specifically in its objection that the date should be June 30, 1905. However, the supporting documentation provided by the City to the Department only supports a July 16, 1924 priority date. According to a newspaper article in the claim file the city of Alameda was founded on July 17, 1924. According to the article, the first well was dug to a depth of 65 feet. The article further states that the well was deepened to a depth of 100 feet during the term of Alameda's first mayor. The priority date recommended by the Department is one day before the City of Alameda was founded. The Department recommended this date because the well appeared to be in existence when the City was founded. The actual date the well was developed has not been documented.

There is nothing in the record even remotely supporting Pocatello's claim to a 1905 priority date. The newspaper article was in the July 20, 1952, edition of the *Alameda Enterprise*, and it reported a speech given to a service club by an early pioneer resident of Alameda. The article reported that the speaker "came to the area in 1905," and that is apparently how Pocatello arrived at its claimed priority date of 1905. The article did not report the speaker as stating that the well was in existence when he came to the area. The only inference that could be drawn from the article is that the well was in existence when Alameda was founded. The speaker's only reported comments regarding when the well came into existence were as follows:

> In commenting on the city water system, the speaker pointed out that the first well was dug to a depth of 65 feet, providing a good supply of water, but during the term of Mr. Freckleton, Alameda's first mayor, the well was drilled down to 100 ft. and another 65 ft. well was dug later.

13

On appeal, Pocatello does not contend that there is any evidence in the record supporting its claimed 1905 priority date, or any other date. It simply argues that there is evidence that the villages of North Pocatello and Fairview consolidated to form Alameda and that the principal purpose was to purchase an existing water system. Pocatello concludes by stating, "This evidence supports an earlier priority date than July 16, 1924, for water right 29-13588," although it does not argue that the evidence supports any particular date, month, or year as the priority date.

"Until 1971 Idaho recognized two methods of appropriating water of the state both of which were equally valid: the statutory method of appropriation and the constitutional method of appropriation." *Fremont-Madison Irrigation Dist. and Mitigation Group v. Idaho Ground Water Appropriators, Inc.*, 129 Idaho 454, 456, 926 P.2d 1301, 1303 (1996). Water right 29-13588 is based upon the constitutional method. When one diverts unappropriated water and applies it to a beneficial use, the "right dates from the application of the water to a beneficial use." *Crane Falls Power & Irrigation Co. v. Snake River Irrigation Co.*, 24 Idaho 63, 82, 133 P. 655, 661 (1913). That date must be based upon evidence, not speculation. If a water right is based upon the constitutional method, "one of the essential requisites to establish his claim is the application of water to a beneficial use, and, where there is a total lack of evidence upon this point, a decree awarding water to the claimant cannot be sustained." *Reno v. Richards*, 32 Idaho 1, 8, 178 P. 81, 83 (1918).

In *Reno*, Franklin A. Reno and Jennie C. Reno each had 160-acre homestead entries to which canals and laterals were constructed in 1904, permitting water to flow over their lands for the irrigation of natural grasses. However, there was no cultivation on their tracts until 1907. The trial court awarded them each a water right of 3.2 second feet with a date of priority in 1904. Even though the irrigation of natural grasses was a beneficial use, we vacated the awards because

> we have failed to find any evidence showing the amount of water applied to the homestead entries in question during the years 1904, 1905, and 1906; nor is there any evidence at all definite as to whether the whole, or a portion only, of said tracts were irrigated during those years.

*Id*. at 14-15, 178 P. at 86. We added that "it appears that the awards to each of these claimants give them a date of priority in advance of the actual application of the water to a beneficial use of

14

which there is any *definite evidence*, and in amounts greater than that actually applied from year to year." *Id*. at 15, 178 P. at 86 (emphasis added).

Likewise, in *Rabido v. Furey*, 33 Idaho 56, 190 P. 73 (1920), the plaintiffs began in 1906 cleaning out a spring and constructing a ditch to transport the spring water to a natural channel that ran through a canyon. In 1907, the water flowed down to the mouth of the canyon where they diverted it into a ditch they had constructed. In 1909, they irrigated 40 acres of the plaintiff Mary Rabido's land. The trial court found that her priority date was 1907, the year the water was brought down the canyon. We disagreed, stating, "[W]e must fall back on the date of the actual application of the water for the date of her priority. From the evidence in the record it is not possible to state exactly when the .8 second feet of water was applied to her entry." *Id*. at 63, 190 P. at 75.

With respect to water right number 29-13558, there is no evidence in the record that the water from this well was actually applied to a beneficial use at any time prior to the date decreed by the district court. Therefore, it did not err in determining that the priority date is July 16, 1924.

**Water Right 29-13639.** In its supplemental *Director's Report*, IDWR explained its recommendation for the priority date of this water right as follows:

> The City of Pocatello claimed this water right as a beneficial use right from Alameda well no. 3. License no. 29-2324 which covered Alameda well nos. 1, 2 and 3 has a priority date of October 22, 1952. . . . The City objected to the recommended priority date stating that the priority date should be December 31, 1940. The City has not provided any evidence to support the claimed priority date. Thus, the Department recommended this water right with the licensed priority date of October 22, 1952, because there was no evidence to support an earlier date.

The special master moved the date forward one day to October 21, 1952, because the application for the permit, the first step in obtaining a license, indicated the well was in existence when the application was filed, and the court affirmed that date because the State did not object.

Pocatello claims that this water right was acquired earlier than October 21, 1952, based upon the constitutional method of appropriation. An appropriator who has obtained a water right under the constitutional method does not waive that right or its priority by later seeking a license under the statutory method of appropriation. *Clark v. Hansen*, 35 Idaho 449, 454, 206 P. 808, 809 (1922). However, to obtain an earlier date Pocatello had the burden of proving its claim

15

with definite evidence showing an earlier date on which the water was applied to a beneficial use and the amount so applied.

As with water right number 29-13558, Pocatello did not do so. It simply states, "Alameda grew from a population of 2100 people in 1940 to 4705 people in 1950 and to over 10,000 people in 1960. This evidence supports a priority date earlier than October 21, 1952 for water right 29-13639." It again does not identify what the earlier date should be. It apparently wants this Court to speculate as to one. Speculation is not a substitute for evidence. The district court did not err in determining that the priority date for water right number 29-13558 was October 21, 1952.

## VIII.

### Is the State Entitled to an Award of Attorney Fees
### Pursuant to Idaho Code Section 12-121?

The State seeks an award of attorney fees pursuant to Idaho Code section 12-121. We will not award attorney fees on appeal under that statute unless we are "left with the abiding belief that the appeal was brought, pursued, or defended frivolously, unreasonably or without foundation." *Rudd v. Merritt*, 138 Idaho 526, 533, 66 P.3d 230, 237 (2003). The entire appeal must have been brought or pursued frivolously, unreasonably, or without foundation. *Id*. Although it is close, we cannot say that the entire appeal was brought and pursued frivolously, unreasonably, or without foundation. Therefore, we will not award the State attorney fees.

## IX.

### Conclusion

We affirm the judgment of the district court. We award respondent costs on appeal, but not attorney fees.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**